Livingston, J.
delivered the opinion of the court. A motion for a new trial is made on the following grounds: 1. Because the plaintiffs were deprived of the full benefit of the testimony of one 'of the witnesses, by reason of his sudden illness. This witness was not seized with a fit until the plaintiffs had examined and given him over to the defendants ; but had it been otherwise, they should have suffered a nonsuit. Instead of this they proceed with the trial, examine other witnesses, and take the chance of a verdict on the testimony then in their power. After this they come too late for a new trial.(b) 2. It is alleged that the verdict is against evidence. The extent of the injury sustained, and expense of repairing, were fairly submitted to the jury as questions of fact, and there is no room to say they have decided them contrary to the evidence. What the repairs cost does not exactly appearthose at Kingston amounted to near four hundred dollars. After mending her ¿ails, rigging and bowsprit, and calking-her ripper works ai Kingston, the John sailed for Sayan nab, but having a dying and *sickly crew, and the schooner continuing leaky, she was obliged to put into the Havanna. There she received a new bowsprit, topsail, squaresail, and flying-jib ; she was also hove, down, calked and graved, but not sheathed; her bottom was somewhat worm-eaten, and the captain believes that w;as in some, degree the case'when she left New-York : after these repairs she took in a cargo, of 155 boxes of sugars and returned to Philadelphia. Prom this statement it is impossible to say that satisfactory evidence was offered to the jury, that her repairs would cost a sum sufficient to justify breaking up the voyage. The mate swears as to this point only from hearsay, and the captain, who was very much interested in making a good story, only gives his opinion, without producing any survey. The repairs actually put on her, the good condition of her cargo, and her returning to the United States with a heavy lading, are strong circumstances against the plaintiff’s claim. 3. It is also said the jury were misdirected on a point of law. In calculating the cost of repairs, they were told that if they believed any were necessary on account of injuries received from worms prior to the vessel’s sailing, the expense of such repairs should not be included' in the estimate. This direction is supposed to be incorrect, inasmuch, as it prescribes a rule, difficult,if not impracticable to follow. How, it is asked, are. the jury to distinguish be: tween repairs rendered necessary by perils of the sea, and those which are become so in consequence of some damage or defect existing at the commencement of a voyage ? And from this difficulty of making the proper separation, as well as from the natute of the contract, it is insisted that the true rule is the. one laid down by Millar, 136, in his Treatise on Insurance, which is, “ that underwriters are responsible *89 for pre-existing defects, unless they be so great as to render the vessel not seaworthy.” It may at first seem bard to hold an insurer in any way liable for the defective nature of the thing insured, but so long as the subject of insurance be seaworthy, is it not part of his contract that in case of accident, he will defray all the expense of placing her in statu quo ? If she be totally lost, he pays the whole sum subscribed without any inquiry into her condition, any father *than to ascertain whether she were seaworthy; so if she be partially injured, the repairs being rendered necessary by a peril insured against, they ought to be made, without any other examination as to her antecedent state, except to determine the same fact of her being seaworthy; for, unless she had been further damaged by one of the perils insured against, no repairs at all would have been necessary. This point is not settled by any adjudged case. In Manning v. Newnham, reported by Millar, 303, the defendant proved some of the damages old and some recent. This is all that is said, and the defendants’ counsel lay no stress on part of the damages being ancient, nor does Lord Mansfield take any notice of that fact. This case, therefore, proves nothing either way. I adopt, however, as a general rule that if the old injuries are not such as to render the vessel innavigable, no deduction, in case of accident, is to be made on that account from the cost of repair, and therefore think the judge was mistaken in directing the jury to make the distinction he did. But admitting a mistake in the judge’s charge, a new trial ought not always .to be the necessary consequence; it is not for every misdirection in point of law that the parties should be put to the expense of further litigation. If the result from the testimony would probably have been the same, whether a particular direction had been given or not, it can be no reason for granting a new trial. Here if the jury had taken into the the estimate the expense of all repairs, without any deduction for old or former injuries, their verdict must have been the same. If, then, there be *90 be good reason to tbink the plaintiffs have not been injured by the judge’s mistake, they ought not to be indulged with a new trial. I do not, by any thing that has been said, mean to be understood as subscribing to the nisi prius opinion of Lord Kenyon, which was cited from 1 Esp. Rep. 444, “ that if a ship’s bottom during a voyage be eaten by worms, so that she be incapable of proceeding, and be condemned, this is not a loss within the policy.” It is not necessary to decide this question now.
New trial refused.

 See Halsey v. Watson, 1 Caines’ Rep. 25, n. (a,) and Steinbach v. Columbian Ins. Co., post, 133, n. (a,) and Deas v. Smith 1 Caines' Rep. 154, n. (a.)