## Rogers *against* Hillhouse.

*October* 19.   A quit-claim deed, without valuable consideration expressed, is valid between
the parties.

Where the judge instructed the jury, that " a quit-claim deed. without va-
luable consideration expressed, might be good between the parties ;" it
was held, that this was equivalent to a positive direction, in favour of the
validity of such deed ; at any rate, that the want of a more explicit direc-
tion, was no ground for a new trial, in a case in which the title of the oppo-
site party was established by fifteen years adverse possession.

Where a party claiming title to land, by adverse possession, offered in evi-
dence an unacknowledged deed, from one to another of the persons under
whom he claimed, and a judgment in favour of one of those persons against
a third person, accompanied with proof of possession, and acts of ownership ;
it was held, that although such party could not establish a title by force of
the unacknowledged deed, or of the judgment between other parties, yet
these documents were admissible to evince the character of the possession.

When the time limited for making entry upon land, has once begun its opera-
tion, it will continue to run, notwithstanding any subsequent disability.

THIS was an action of trespass *quare clausum fregit*, brought
in 1818, and tried in *New-London* county, *January* term, 1820,
before *Brainard*, J.

The plaintiff claimed title to the land described in the dec-
laration, by deed from *Elisha Lathrop* and others, to *Simon
Lathrop*, dated *May* 10th, 1760 ; and through him, at his de-
cease, on the 25th of *January*, 1774, by descent, to his daugh-
ter *Martha Cogswell*, then, and until her decease, on the 6th
of *March*, 1795, a feme covert ; from her, by devise, made
with her husband's consent, to certain of her children and
grand-children ; from them, by deed, dated *August* 31, 1797,
to *Ebenezer Devotion*; who conveyed to the plaintiff, by a
deed of bargain and sale, with warranties, dated *April* 10,
1807, all the land within the boundaries specified in the decla-
ration, excepting and reserving to himself about ten acres
thereof, and by a quit-claim deed, dated the same day, the
part so excepted and reserved.   The defendant contended,
that the acts charged were done upon the quit-claimed tract ;
and that this was the freehold of those, under whom he claimed,
viz. *Elisha Lathrop*, and those under whom *Elisha Lathrop*
claimed, who had been in possession of the land, from the
year 1766, to the present time, holding it as their own.   To
prove that such possession was adverse, he offered in evidence

a deed from *Elisha Lathrop*, to one *Bela Turner*, dated *December* 29, 1781, which had never been acknowledged ; also, a judgment in favour of *Ephraim Miner*, to whom *Turner* had, in 1784, conveyed, and under whom the defendant claimed, against *Joseph Hammond*, rendered in *February*, 1801 ; accompanied with proof, that *Miner*, by virtue of and under that deed and judgment, went into possession of, and exercised acts of ownership on, the land. To the admission of such deed and judgment, with the proof accompanying them, the plaintiff objected ; but the judge over-ruled the objection, and admitted them.

New-London, October, 1820.

Rogers *v.* Hillhouse.

The plaintiff also claimed, that Mrs. *Cogswell*, being a feme covert at the time her right of entry first descended, and so continuing until her decease, her heirs might enter within the period limited by statute, for making entry upon lands after the removal of the disability, notwithstanding the adverse possession might have commenced during the life of her ancestor, *Simon Lathrop*, and continued for more than fifteen years thereafter. But the judge charged the jury, that the statute, having begun to run in the life of *Simon Lathrop*, would continue to run against her right of entry, notwithstanding her coverture, at the time her right first descended.

The defendant contended, that there being no other consideration expressed in the quit-claim deed, than the words " for divers good causes and considerations," it passed no interest to the plaintiff. On the other hand, the plaintiff claimed, that a quit-claim deed, without a consideration expressed, would pass the interest in the land to the grantee, and, as between the parties to it, would be a valid instrument. The judge charged the jury, in general terms, that a quit-claim deed *might be good without consideration ;* but did not state to them, whether in the present case, the quit-claim deed was, as between the parties, effectual to pass the interest in the land.

The defendant having obtained a verdict, the plaintiff moved for a new trial, on the ground that the several decisions of the judge above stated, were erroneous.

*Goddard* and *C. Perkins*, in support of the motion, contended, 1. That a quit-claim deed, without consideration, is valid ;

New-London, and so the jury should have been explicitly instructed.    Such
October,
1820.
a deed is valid, because it is a common law conveyance ; and
a consideration is not necessary, to any instrument of convey-
Rogers
v.
Hillhouse.
ance at common law.    4 *Cruise's Dig.* 24.  1 *Cruise's Dig.*
409.    From the charge, the jury could understand nothing
more, than that, under certain circumstances, a quit-claim
deed, without consideration, might be good ; but from the
judge's avoiding the application of his remark to the deed in
question, they would, of course, infer, that this deed was not
valid.

2. That a paper, purporting to be a deed of land, without
acknowledgment, is wholly inoperative, and inadmissible in
evidence.    1 *Stat. Conn. tit.* 163. *s.* 6. 7.  *Doe* v. *Roe*, 1 *Johns.
Ca.* 402.  *Stanton* v. *Button*, 2 *Conn. Rep.* 527.    The taking
of possession, under a void instrument, cannot make it evi-
dence in courts of law.

3. That the record of the judgment, recovered by *Miner*
against *Hammond*, ought not to have been received as evi-
dence in this suit ; the parties to that judgment being *stran-
gers* here.    *Phill. Ev.* 228.    Neither the claiming to exer-
cise acts of ownership, nor even an actual entry under the
judgment, can alter the legal character of the judgment, or
vary the rights of those, who are neither parties nor privies.

4. That during the whole period, from the death of *Simon
Lathrop*, when the estate descended to Mrs. *Cogswell*, until
five years after her death, the plaintiff's title was protected
from the defendant's claim, by adverse possession.    The stat-
ute contemplates several rights of entry, as accruing at differ-
ent times.    It provides, that any person may enter, within
fifteen years after the *first accruing* of his right ; allowing him
full fifteen years for making entry, and imputing no laches to
him during that period.    But if he die before its termination,
a right of entry descends.    If the heir is, at this time, a feme
covert, her right is protected, by the proviso, during the con-
tinuance of her disability, and five years afterwards.    This
construction militates against no rule of law, nor judicial de-
cision.    The cases of *Stowel* v. Lord *Zouch*, 1 *Plowd.* 355. and
*Doe* d. *Duroure* v. *Jones*, 4 *Term Rep.* 300. were under the
statute of *Fines*, and not under that of 21 *Jac.* 1. from which
ours is derived.

*Cleaveland* and *Gurley*, contra, contended, 1. That the charge, in relation to the quit-claim deed, was unexceptionable. It was made with reference to the facts of the case. The plaintiff introduced this deed to establish his title ; and the judge suffered it to go to the jury, for the purpose for which it was offered. His observations upon it, in his charge to the jury, must have impressed their minds with the idea, that the want of consideration, was, of itself, no objection to the deed. He was not requested to instruct them, that a quit-claim deed without consideration, is, under all circumstances, valid ; and if such request had been made, the charge requested could not have been given ; for if the parties had been disseised, such a deed would have been void.

2. That the unacknowledged deed from *Lathrop* to *Turner*, and the judgment recovered by *Miner* against *Hammond*, were properly received in evidence, not to make out a *title* under the deed or the judgment, but to evince the *character of the possession*. For this purpose alone were they offered. Any other facts, or even the declarations of *Turner* and *Miner*, made when they respectively went into, or had, possession, which explained the *intention* of the parties, would be equally admissible. Whether a possession is adverse or not, depends upon the intention with which it is taken and held ; and this intention is to be discovered, by a view of all the circumstances of the transaction. If a man takes a deed of a piece of land, when he goes into possession of it ; or if, when his possession is disturbed, he sues the wrong-doer ; it makes very little difference, so far as his intention is concerned, whether that deed be defective or not, or whether that suit be against a stranger or a party.

3. That the right or title in question, accrued on the disseisin in 1766, when the person disseised was under no disability. By the lapse of fifteen years, without entry or assertion of right, that person " and his heirs" were barred, within the body of the statute. Mrs. *Cogswell* not being the person to whom the right or title first accrued, is not within the proviso. It has been uniformly held, that if the statute has once begun to run against the person to whom the right or title first accrued, a subsequent disability in his heir, will not arrest its progress. *Stowell* v. Lord *Zouch*, 1 *Plowd.* 356. *Doe* d. *Du-*

*New London,*
October,
1820.

*Rogers*
*v.*
*Hillhouse.*

*New-London,*  roure v. Jones, 4 *Term Rep.* 300.  Cotterell v. Dutton, 4 *Taun.*
October,  830.  Bunce v. Wolcott, 2 *Conn. Rep.* 27.  Griswold v.  Butler
1820.  & ux. 3 *Conn. Rep.* 227.

Rogers
*v.*
Hillhouse.

HOSMER, Ch. J.  The controversy between the parties, re-
spects the title to the land, on which the trespass is declared
to have been committed.

The plaintiff claims title from *Elisha Lathrop* and others,
by deed from him to *Simon Lathrop*, from whom the estate
descended to *Martha Cogswell*, a feme covert.  She, with the
consent of her husband, devised the estate to certain of her
children and grand-children, who granted it to *Ebenezer De-*
*votion*, and he, by deed of bargain and sale, conveyed all the
described tract, except ten acres, to the plaintiff; and the ten
acres he released to him, by deed of quit-claim.  The defend-
ant, not admitting the legality of the last-mentioned deed, in-
sists, that he, and those under whom he claims, have been in
the adverse and uninterrupted possession of the premises, for
more than fifteen years.

A necessary link in the chain of the plaintiff's title, is a deed
of release, in which the only consideration is thus expressed ;
" for divers good causes and considerations."  Two questions
arise on this point ; whether the above deed is valid, as no
consideration is definitely set forth ; and if it is valid, whe-
ther the charge of the judge is not defective, inasmuch as he
merely informed the jury, that a quit-claim deed might be
good without consideration, but did not state to them, whether
the deed of release in question, was of legal sufficiency.

That a deed of quit-claim, is a conveyance at common law,
and valid without consideration, is now admitted.  4 *Cruise's*
*Dig.* 24.  1 *Cruise's Dig.* 409.  But, as this was a question
seriously made and agitated at the circuit, it became the duty
of the judge to express his opinion upon it to the jury.  He
informed them, that " the deed might be good without con-
sideration,"—and this is *all* that the motion states ; nor are
we authorized to conjecture on this subject, in the face of the
statement, which the judge allowed, and which, we must be-
lieve, comprised the whole instruction given to the jury.  Was
this equivalent to the information, that the deed of release
was valid ; and did the jury so understand it ?  I think it was
not; that the jury did not thus understand it ; and that, at

least, it left the subject in a light extremely equivocal. The *New-London*, October, 1820.
jury, instead of knowing that the deed was valid, if they gave
the popular and accustomed force to the language addressed
to them, were left to form their own opinion on this all-essen- Rogers *v.* Hillhouse.
tial point. Were I to propose the question, Is a certain act
legal, and to receive a reply, that *it might be so*, I should not
consider myself possessed of the speaker's opinion. The an-
swer would break off in the middle, and leave the mind in ex-
pectation of something more. I should listen to hear the rea-
son why the act *might* be, and was not, legal. In short, the
sentence would be imperfect; unadapted to convey an opin-
ion; and calculated to announce a doubt, or to waive an an-
swer to the question put. The phrase, so far as it goes, is in
the *potential* mode, which merely declares the possibility of
action or being; and is commensurate with the expressions—
*it may be*, or *it is possible*,—and to nothing more. On this
point, I have no imaginable doubt. The construction I have
given to the language used by the judge, is not rigorous, but
results from the grammatical and popular import of the words.
A charge is ever imperfect, unless it conveys the intended sen-
timent so clearly, that men of ordinary sense and talents,
may be presumed to be acquainted with the opinion of the
speaker.

To the title of the defendant, founded on the adverse and
uninterrupted possession of the premises, for more than fifteen
years, several objections have been made.

The court admitted, in evidence, an *unacknowledged* deed,
and the record of a judgment, to shew, that the persons under
whom the defendant claims, were in by disseisin—thus to sup-
port his title, by exclusive and adverse possession. Adverse
possession is a possession under colour and claim of title. 9
*Johns. Rep.* 179. 180. Any evidence, conducing to prove,
that the possession was accompanied with a claim of title, and
that it was the intention of the possessor, to hold exclusively
for himself, was undoubtedly admissible; and of this charac-
ter is the testimony objected to. The foundation of the ob-
jector, is placed in a misconception of the purpose, for which
the evidence was admitted. It was not adduced to establish
a title, by force of the unacknowledged deed, or of the judg-
ment between other parties; for to this end, it unquestionably
would be incompetent. But it was good proof, to shew the

nature of the occupancy, and that it was adverse.    Even parol declarations, accompanying an entry, or a subsequent act, have been held good evidence, to evince the character of a possession.    *Jackson* d. *Youngs* & al. v. *Vredenbergh,* 1 *Johns. Rep.* 159. *Co. Litt.* 374. *a.*

The plaintiff also insisted, that notwithstanding the adverse possession, under which title was claimed by the defendant, commenced during the life of *Simon Lathrop,* yet as Mrs. *Cogswell,* who took from him the estate by descent, was a feme covert, at the time her right of entry first accrued, and continued so until her decease, her heirs might enter at any time within five years after the removal of this disability.    The judge charged the jury, that the statute having begun its operation, in the life of *Simon Lathrop,* would continue to run, notwithstanding the coverture of Mrs. *Cogswell.*    Of the correctness of this opinion, I cannot entertain a doubt; nor will I enter into the discussion of a point so fully established.    Under the statute of *Fines,* as well as the statute of 21 *Jac.* 1. *c.* 16. and our own act of limitation, this construction, so essential as it is to effectuate the intent of the laws referred to, has invariably been given.    *Stowell* v. Lord *Zouch,* 1 *Plowd.* 356.    *Doe* d. *Duroure* v. *Jones,* 4 *Term Rep.* 300. *Bunce* v. *Wolcott,* 2 *Conn. Rep.* 27.

On the whole, I am persuaded, that justice has been done to the plaintiff, in relation to all the matters complained of, except with respect to the imperfect charge of the judge, in regard to the deed of release ; and on this ground, solely, I would grant a new trial.

PETERS, J.    I concur in the opinion of the Chief Justice, except his criticism on the language of the judge on the circuit.    The motion does not profess to give us the words of the charge, but merely states its substance ; and the question now is, whether the judge spoke positively, or hypothetically; or whether the charge was absolute, or conditional.    The question submitted to the judge was, whether a quit-claim deed, without valuable consideration expressed, is valid between the parties.    This question he was certainly bound to answer ; and, I think, he has done it.    The motion states, that the judge informed the jury, that " a quit-claim deed, without valuable consideration expressed, might be good between

the parties ;" that is, that the law did not render such a deed void ; and so I think the jury must have understood him ; for if the law made such a deed void, it could not possibly be good.

But, as I concur entirely with his honour, in thinking that justice has been done to the plaintiff, on all the other points, I am clearly of opinion, that we ought not to advise a new trial ; for a quit-claim deed would avail nothing, against an adverse possession of fifteen years. In *Depeyster* v. *The Columbian Insurance Company*, 2 *Caines*, 85. 90. it is said, by *Livingston*, J. in delivering the opinion of the conrt, " admitting a mistake in the judge's charge, a new trial ought not always to be the necessary consequence ; it is not for every misdirection in point of law, that the parties should be put to the expense of further litigation. If the result from the testimony would probably have been the same, whether a particular direction had been given or not, it can be no reason for granting a new trial." The same doctrine is laid down in *Edmonson* v. *Machell*, 2 *Term Rep.* 5. " An application for a new trial," said *Ashhurst*, J. in delivering the opinion of all the judges of *England*, " is an application to the discretion of the court, who ought to exercise that discretion, in such a manner, as will best answer the ends of justice. There does not appear to be any ground for the defendant to call on the discretion of the court, to send this cause down to be re-tried, on a technical objection in point of law. And all the judges are unanimously of opinion, that, as complete and substantial justice has been done, there is no reason to grant a new trial." If, then, a new trial ought not to be granted, on a mere technical objection in point of law, *a fortiori* it ought not to be granted, on a mere *grammatical* objection.

CHAPMAN, BRAINARD, and BRISTOL, Js. were of the same opinion.

New trial not to be granted.