East'n District.
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. CO.

The insured may in all cases abandon as for a *total loss* when the object insured has been damaged to the amount of half its value.

Whether the insured may abandon where there has not been a total loss, in case the insurer will not undertake to repair the vessel?—*Quere.*

But the insurer cannot claim this right, if he *abandons* without calling on the insurer to make those repairs.

If a ship becomes unnavigable from age or rottenness, the insurers are not responsible.

If the injury which the vessel has sustained, be such that the unsound and decayed parts of the vessel cannot be used

HYDE & AL. vs. LOUIS. STATE INS. CO.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court.

This is an action on a policy of insurance, executed by the defendants on the steamboat Alabama, by which they insured her against the ordinary risk for the space of twelve months. The petitioners state that after making the insurance, and before the expiration of the time therein mentioned, the boat proceeded on her voyage, and while so proceeding, by reason of excessive fogs and through the perils of the river, ran foul of another steamboat, and was wholly lost, and has been ever since abandoned to the insurers, of all of which they have had notice, and have thereby became liable to pay the sum insured, viz. six thousand dollars.

The defendants in their answer, admit the execution of the policy, but aver that the hull of the boat at the time of the execution thereof, was not sound or seaworthy—that she was not lost by the perils and risk insured against, but by the fault and negligence of the master.

On these issues the cause was, by consent, submitted to a special jury in the court below,

who found a verdict for the plaintiff for the whole sum insured. The defendants appealed.

East'n District.
May, 1824.

HYDE & AL.
vs.
Louis. State
Ins. Co.

The two questions to which the argument of counsel has been principally directed in this court, are the seaworthiness of the boat at the time of insurance, and the right of the insured under the circumstances of the case, to abandon. The first is one of fact alone, and a number of witnesses were heard in support of the allegations of each of the parties. We have perused their testimony with a great deal of care, and though we do think that the weight of it is in favour of the appellants, yet we do not feel, that it sufficiently preponderates on that side, to authorise us to set aside a verdict, which an intelligent jury has pronounced: more particularly when the evidence was so contradictory. This part of the case disposed of, we come to the other and more difficult part of it; namely, whether the injury which the boat received, was such, as authorised the plaintiffs to abandon her. The general rule on this subject is, that the assured may abandon in all cases where the object insured has been damaged to the amount of half its value; this being considered a *total loss* in the sense in

as before the accident, without repairs equal to half the value, the insured may abandon. But if repairing the injury which has arisen from one of the perils insured against, will replace her in the same situation she was before, no matter how unsound, the insured cannot abandon.

East'n District. which these words are used in the law of in-
·*May*, 1824.   surance.

HYDE & AL.      Before examining the evidence, it is necessary
   *vs.*
LOUIS. STATE  to consider a question raised by the counsel for
 INS. Co.
the appellees.    It has been contended by him,
that even supposing the damage done to the
boat, was not such as authorised an abandon-
ment, the appellants cannot claim the benefit
of the objection; because they did not offer at
once, to pay all the expenses necessary to put
the vessel in the same situation, in which she
was previous to receiving the injury.   We have
looked into the authorities, to which we were
referred in argument, in support of this position,
and some other that our own researches have
since furnished us with.    We find it laid down
by Marshall and Parke, on the authority of
Lord Mansfield, that if the voyage be lost, or
not worth prosecuting—if the salvage be high
—if further expense be necessary—if the insu-
rer will not at all events undertake to pay
that expense—the insured may abandon.  Such
general expressions afford great latitude for
construction, and we accordingly find that
those whose duty it has been to act on them,
and apply them, are by no means agreed as to
their true import.    Some thinking that where

there is even a technical total loss, the assurer can discharge himself from accepting the abandonment, by engaging to pay all the expenses, necessary to replace the ship in the same situation, she was previous to the accident. This opinion is combated, and apparently on strong grounds, by others, who contend that the offer cannot defeat an indisputedly vested right. Which of these opinions we should adopt, it is not incumbent on us at this time to say, neither do we find it necessary to enter into another question, on which the courts are not all of the same opinion : whether the refusal of the insurer to advance money to defray the expense, will in any case turn a a partial loss into a total loss. 6 *Massachusetts*, 284. 2 *Marshall*, 562, in note 5. *Sergeant & Rawle*, 509. 1 *Conn. Rep.* 307. *Philips on Insurance*, 406.

We say we find it unnecessary to enter into these questions : because the facts in the instance now before us do not require us to do so.—admitting, that a demand and refusal to furnish money sufficient for the necessary repairs authorise the assured, in case of a partial loss, to abandon, no such demand or refusal has been proved here. The plaintiffs commenced by abandoning, and deprived the

East'n District.
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. Co.

East'n District.
May, 1824.

HYDE & AL.
vs.
LOUIS. STATE
INS. Co.

defendants of an opportunity of discharging themselves, by advancing the money, or becoming responsible for the expenses. If the loss were only partial at the time the abandonment was made, the insured had no right to resort to that step ; and it would be a most extraordinary doctrine to hold, that a subsequent failure of the insurer to do something inconsistent with the right set up by the insured, should be held to render an act valid, which was not so at the time it was made. Independent of the reason of the thing, the right given in the authorities relied on, justifies this construction. The words are, " If the insurer will not undertake to pay the expenses,—the insured may abandon." This language implies most clearly that the abandonment must follow, and cannot precede the refusal ; because if the insurer did undertake to pay the expenses, the insured could not abandon. In the case before us, the alternative of making the repairs, or taking the boat, was not presented to the defendants. The plaintiffs took on themselves to consider the loss as a total one, and their right must be now tested by a reference to the state of things which existed at the time they resorted to this measure.

East'n District.
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. CO.

With this explanation of our views of the law, we proceed to an examination whether the injury sustained by the boat was equal in amount to the one half of her value. The great difficulty in arriving at a correct conclusion on the point, arises from three different facts, which we find clearly established by the testimony. *First*, that at the time she was abandoned, the cost of repairing, would have been more than she was worth. *Second*, that the damage she sustained from running foul of the Natchez, did not amount to more than $1400. And *third*, that if the boat had met with no accident, she might have run in the state she was, for eighteen months. On these facts it is contended by the insurers, that all they had to do, was to repair the damage she actually sustained ; and that if from any other cause, she was not worth repairing, the fault was in the boat, and they are not responsible for it. On the other side, it is urged that the two facts of her being able to run eighteen months, had she not met with this injury, and the amount it would have cost to repair her, shew conclusively, that it was owing to the accident these repairs were necessary ; and that the insured was deprived of the use of his

East'n District.
May, 1824.

HYDE & AL.
vs.
LOUIS. STATE
INS. CO.

boat, for the space of time mentioned in the policy.

We apprehend the rule to be, that in case an injury is received by an old and decayed vessel, which, independent of the accident, might have run for some time; if the repairs cannot be put on her in such a manner, that the unsound part can be used as formerly, without an expense on both, equal to the one half of the value, or in other words, when the injury which the insurers are obliged to make good, is the cause of the decayed parts requiring repairs—that then the insured may abandon. But if repairing the injury, which has arisen from one of the perils insured against, will replace her in the same situation she was in before, no matter how unsound all the other parts may be, then the insured should not have this right; for all that they can ask is, that the boat should be placed in *statu quo*. We can find no elementary writer by whom, nor adjudged case wherein, the principle just stated is laid down; but we think it the common sense of the matter, and that it approaches closely doing justice to both parties.

A case arose in the state of New-York, and was decided there, in which a different rule

was recognized. The facts in that case appear to have been, that the vessel at the time of sailing was staunch and sound, but that her bottom was worm eaten. She was compelled to put into Kingston in a damaged state, where in the opinion of those who made a survey of her, it would have cost more than her value to repair her; she was accordingly sold, and the assured abandoned to the underwriters. On the trial a question was made, whether the repairs rendered necessary on account of the vessel being worm eaten, should be included in the estimate of the expense of repairs, by which the loss should be determined to be partial, or total.

The jury were told "that if in calculating the repairs, they believed that any were necessary on account of injuries received from worms prior to the vessel's sailing, the expense of such repairs should not be included in the estimate. The supreme court held this direction wrong, and they said, "if the ship be injured, the repairs being rendered neceessary by a peril insured against, they ought to be made without any other examination as to her antecedent state, except to determine the fact of her being seaworthy. We adopt as a gene-

East'n District:
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. Co.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. CO.

ral rule, that if the old injuries are not such as to render the vessel innavigable, no deduction is to be made on that account from the cost of repairs. 2 *Caines*, 85.

The latest writer we have on insurance observes, " This case cannot mean that if a ship strike a rock, and break some of her planks and timbers, the insurers are liable to pay not only for the repairs of such damage, but also for repairing or replacing other parts of the ship which may have been worn out or have decayed, either before or subsequent to the commencement of the risk." *Phillips on Insurance*, 406. Whether the case means that or not, we cannot say ; but if it does, we can say, that we cannot accede to it. For if the underwriters be responsible for any defect that may exist in the ship independent of those occasioned by the accident, then it would follow that if the insured had hauled the vessel up without any such accident, and discovered that she was decayed and rotten, they could have called on the assurers to repair the injury which time had produced upon her. Now this appears to us, not to be one of the risks insured against. There are some general expressions to be found in the books, which go to

East'n District.
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. CO.

supportt he doctrine, that it is sufficient if the vessel be seaworthy at the the time of insurance. *Parke*, 288. *Marshall*, 165. And Parke states, after quoting some *dicta* of Lord Mansfield's, " that if it can be made to appear that the decay to which the loss is attributable, did not commence till a period subsequent to the insurance, as she was seaworthy at the time, the underwriters, *it is presumed*, will be liable." *Parke*, 289. If by these remarks, the writer means, that such is the law as between the shippers of goods on board the vessel, and the insurers, the equity of it, at least, can be conceived ; but if he is to be understood as laying down the rule as applicable to a case between the owner and the underwriter, the justice of it is by no means so apparent; for the injury does not proceed from any peril of the sea, but from an inherent defect in the thing itself. And the law is still more doubtful, for no such risk is insured in the policy. In other parts of his work however, this author seems to recognize the rule as we understand it. 288 & 306. Marshall states that it is a well established principle, on which all the writers agree, that if a ship become innavigable from age and rottenness, the insurers are not respon-

East'n District.
*May*, 1824.

HYDE & AL.
*vs.*
LOUIS. STATE
INS. CO.

sible ; and in support of this assertion, he quotes *Traga, Valin, Pothier, and Casaregis.* 1 *Condy's Marshall,* 156 & 157. *Phillips on Insurance,* 246, 251.

We conclude therefore that the underwriters are not obliged to make good the decayed and rotten parts of a vessel, unless the accident which happens within the peril insured against, is of such a nature, as will not admit of repairs being placed on her, so that the decayed and rotten parts can be used as formerly.

It now only remains to apply these principles to this case. We have it proved to our satisfaction, that the damage which the boat suffered in running foul of the Natchez, did not equal one half of the value insured. The contract of insurance being one of indemnity, the assured, in justice, should not recover more than the sum necessary, to repair the injury which the accident occasioned. But in support of the demand for the whole amount mentioned in the policy, they rely on the circumstance that it would have required $10,000 to put the vessel in proper repair. This must necessarily mean, not such repairs as were rendered necessary by the accident, for it is in proof that $1400 would have paid for them, but

such as resulted from the unsound and decayed state of the boat, and for these, as we have already stated, the insurers are not responsible. There is no evidence that the injury done by the accident was the cause of the vessel being condemned; on the contrary, it is expressly stated that this condemnation was owing to her rottenness. And on the whole, we are satisfied that there was not that total loss, resulting from any of the perils covered by the policy, which authorised the insured to abandon.

East'n District.
May, 1824.

HYDE & AL.
vs.
LOUIS. STATE
INS. CO.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, that this cause be remanded for a new trial, and that the appellees pay the costs of this appeal.

*Livermore* for the plaintiffs, *Eustis* for the defendants.