NED BOOTHE *v.* THE STATE.

1. SEVERANCE. — Under article 230 of the Penal Code (Pasc. Dig., art. 1826), persons who, either jointly or separately, have been indicted for the same offense are disqualified, before acquittal, as witnesses for each other, and neither of them can, under this article, require that his co-defendant be first put on trial; and the uniform practice under this article was for the State to elect which defendant should be first tried.

2. SAME. — Article 587 of the Code of Criminal Procedure, as amended by the act of 1874, enables a joint defendant, by complying with its requirements, not only to obtain a severance, but to have his co-defendant tried first, for the purpose of qualifying him as a witness by an acquittal. This right, however, is not secured to defendants separately indicted for the same offense.

3. SAME — CASE STATED. — Appellant was indicted for the murder of R., and one A. was separately indicte1 as an aider and abettor in the crime. Appellant was first put on trial, and he moved for a severance, in order to obtain the testimony of A. The severance was refused, but the appellant was

allowed to introduce and examine A. as his witness, though the indictment against A. was still pending. *Held*, that appellant was not entitled to a severance under the act of 1874, nor to require that the indictment against A. be dismissed; and no error to his prejudice is apparent.

4. Declarations as Res Gestæ.—In order to constitute declarations a part of the *res gestæ*, it is not necessary that they were precisely coincident in point of time with the principal fact. If they sprang out of the principal fact, tended to explain it, were voluntary and spontaneous, and made at a time so near it as to preclude the idea of deliberate design, they may be regarded as contemporaneous, and are admissible in evidence.

5. New Trial—Evidence. — If evidence was excluded which might properly have been admitted, and which, if admitted, would have proved a fact so remotely connected with the case as to be entitled to no appreciable weight in favor of the accused, its exclusion furnishes no ground for a new trial.

6. Murder in the First Degree—Charge of the Court. — As the punishment for murder in the first degree is absolutely fixed at death, and is not now commutable by the jury, as it was under the Constitution of 1869, it is not necessary, though not improper, that the punishment for that offense be given in charge to a jury trying an indictment for a murder committed since the abrogation of that Constitution.

7. Same—Verdict. — "We, the jury, find the defendant guilty of murder in the first degree," is a good verdict.

8. Alibi—Charge of the Court. — Trying a murder case, the court below charged the jury, in effect, that if they entertained a reasonable belief that, at the time the deceased was killed, the accused was at his own home, and not at the place of the killing, they should acquit. *Held*, not a sufficient charge *per se* on the subject of *alibi;* but, when followed by a sufficient charge on the doctrine of reasonable doubt, the entire context was a sufficient charge on the subject of *alibi.*

9. Same. — A mere omission in one part of the charge of the court, if substantially supplied in another part, is not error when it does not appear that the jury were misled by it.

10. Same.—Prior to reading his charge to the jury, the judge has the right to correct it by erasures, interlineations, or additions.

11. New Trial.—Newly-discovered evidence, if merely cumulative, or if intended to impeach witnesses, is not cause for new trial; nor is the absence of counsel from the trial, even in a capital case, when no postponement of the trial was asked on that account, and the result appears unaffected by it.

12. Murder—Evidence.—That, a very short time before the homicide, a person other than the accused made threats to take the life of the deceased, was not competent evidence in behalf of the accused.

Appeal from the District Court of Liberty. Tried below before the Hon. H. C. Pedigo.

The statement of facts in this case is voluminous, but the opinion of this court gives a clear summary of the material evidence, and discloses the rulings of the court below upon which error is assigned.

Phil Philander, who was in company with Scott Baldwin and Dick Reeves, the deceased, when the murder was committed, testified positively to his recognition of the appellant and Henderson Paul as the persons who perpetrated it. Scott Baldwin testified that he saw the two men, but could not say that he recognized them. He stated, however, that they were about the size of the appellant and Henderson Paul. The parties and nearly all of the witnesses were negroes.

*E. B. Pickett*, for the appellant, filed an able argument, reviewing the evidence.

*George McCormick*, Assistant Attorney-General, for the State.

WHITE, J. The appellant, Ned Boothe, and one Henderson Paul were jointly indicted for having murdered one Dick Reeves, in Liberty County, July 30, 1876. At the same term of court another and separate indictment was presented against one Swan Andrews, as a principal offender, charging that Ned Boothe and Henderson Paul committed the murder, and that the said Swan Andrews was present, counseling, advising, aiding, abetting, and assisting them.

Henderson Paul was tried and acquitted. When the case was called for trial as to Ned Boothe, he filed a motion and affidavit for a severance as between Swan Andrews and himself, stating that there was no evidence against said Andrews, and praying that Andrews might first be tried, in order that affiant could have the benefit of his testimony in his behalf on the trial of his (affiant's) case. This motion was overruled by the court, and a bill of exceptions duly

saved. Appellant Boothe was then arraigned and put upon his trial, the result of which was a verdict and judgment of guilty of murder in the first degree, with the death penalty.

There can be no question as to the degree of the crime, by whomsoever committed. It was murder in the first degree, as was properly charged by the court—a homicide by lying in wait, a cold-blooded assassination. The unsuspecting victim, with two companions, was returning home between eight and nine o'clock on Sunday night, when he was suddenly fired upon from the briars and bushes which lined the road they were traveling, and almost immediately the second load of a double-barreled gun, from the same ambush, fired evidently at him, struck down Phil Philander, one of his companions. As soon as the second shot was fired, Dick Reeves, the deceased, screamed, broke into a run for his house, which was several hundred yards distant, and two men rushed out of the bushes and briars in pursuit of him. Reeves' wife, and some friends who were sitting upon the gallery of his house with her, heard the shots and scream, and immediately started in a run towards the spot. After running about 200 yards they met the deceased, as he was running slowly up the road. He told them he was shot; said he was shot in the breast and belly; that Phil Philander was shot, too; that he was shot down by the Living House, and that Ned Boothe and Henderson Paul shot him. They assisted him forward about twelve steps from where they met him, when he sank down and soon died. He lived about half an hour from the time he was shot. As a motive on the part of appellant for the commission of the deed, the State proved that Ned Boothe had said several times that Dick Reeves, the deceased, had conjured him and given him the sore leg, and that he intended to kill him; that he never would have any peace until he did kill him.

The defense was an *alibi*, and also that threats had been

made by a third party, the step-son of deceased, that he intended to kill deceased; and that the deed was probably committed by him.

The substance of the errors complained of may be stated as follows:

1. The court erred in overruling defendant's application for a severance, and in its refusal to place Swan Andrews first upon trial.

2. The court erred in permitting the declarations of deceased as to who shot him to be given in evidence over objections by defendant.

3. The court erred in excluding certain evidence.

4. The court erred in the charge to the jury (1) because it did not inform the jury as to the punishment for murder; (2) subdivision 11 of said charge was clearly erroneous; (3) because of an erasure by the judge of a clause or paragraph of the charge.

5. The court errred in overruling the motion for a new trial (1) because the wife of defendant, and a principal witness, was taken sick on the witness-stand, and was unable to testify to matters important to the defense; (2) because counsel for defendant was taken sick during the trial, and was not able to argue the cause to the court and jury; (3) because of other grounds set forth in the several affidavits in support of the motion.

1. With regard to the application for a severance. We have two statutory provisions upon this subject. The first is article 230 of the Penal Code (Pasc. Dig., art. 1826), and reads thus:

" Persons charged as principals, accomplices, or accessaries, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another; but they may claim a severance, and if any one or more be acquitted, they may testify in behalf of the others."

The second is article 587 of the Code of Criminal Produre (Pasc. Dig., art. 3052), which, as amended by the act of March 16, 1874 (Gen. Laws Fourteenth Legislature, 29), is in these words :

" Where two or more defendants are jointly prosecuted, they may sever in the trial at the request of either; and if the defendant upon whose application the severance is allowed shall file his affidavit, stating that a severance is requested for the object of obtaining the evidence of one or more of the persons jointly indicted with him, that such evidence is material for his defense, and that he verily believes that there is no evidence against the person or persons whose evidence is desired, such person or persons shall be first tried."

Under the first statute. it had grown up into almost a uniform practice that whenever a severance was obtained, notwithstanding it was done upon motion of one defendant for the express purpose of obtaining the testimony of another in his behalf—the practice was uniform, we say, to permit the prosecution, after the severance was granted, to elect which defendant should first be tried. This election was recognized as a right belonging to the State, which could not be called in question. *Bybee* v. *The State*, 36 Texas, 366. The act of 1874 was passed so that the right of election might be exercised by the defendant. The humane purpose and primary object of both laws was to give to one joint defendant, against whom was the burden of the proof, the right to have the benefit of the testimony of a co-defendant who had been first tried and acquitted of the crime.

Now, in the case at bar the record shows that though the motion for a severance was overruled, yet on the trial the defendant not only proposed, but was permitted, to introduce upon the stand, as a witness in his behalf, his co-defendant, Swan Andrews, and that this was done without the least objection upon the part of the State. Not only so,

but this witness came upon the stand accredited as any other witness of defendant, and testified fully to all he knew about the transaction. It is here objected, however, that he should have been relieved of the ban of suspicion resting upon him under the indictment charging him with the same offense, and that the injustice to defendant consisted in the effect of this suspicion upon the credibility of his evidence. There is not the slightest reason shown in support of this argument. So far as he was concerned, we have seen that he was not jointly indicted with defendant; and, for aught that appears, there is nothing to show that the jury were in any manner apprised of the fact that he was charged in another or separate indictment with the same offense. As is stated above, the purpose and intent of the law was to give, under certain circumstances, to one defendant the right to have the testimony of his fellow who was charged with the same offense. In this case that right was fully and freely accorded the defendant, and we cannot see that he has any right to complain. He was not entitled to avail himself of the provisions of the act of 1874, because that act only applies to cases of joint defendants. Under the statute (art. 1826), as we have seen, had a severance been granted, the right to elect which should first be tried was a matter of choice with the State, and under its provisions we could not have revised the action of the court had the defendant been first put upon his trial.

2. It is urgently insisted that it was error to permit the State to prove the declarations of the deceased with regard to the parties who shot him. It is contended that they were not dying declarations, because the circumstances under which they were made did not bring them within the terms and purview of the law (Pasc. Dig., art. 3125) prescribing the rules under which the competency of such testimony is determined. It is also contended that they were not competent or admissible as *res gestæ*, because they were

not made at the time and place of the shooting, but some distance from where the shooting occurred, and then only as narrative of what had occurred, and in reply to questions from his wife.

Mr. Greenleaf says : " The surrounding circumstances constituting parts of the *res gestæ* may always be shown to the jury along with the principal fact; and their admissibility is determined by the judge, according to the degree of their relation to that fact, in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. The principal points . of attention are whether the circumstances and declarations offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character." 1 Greenl. on Ev., sec. 108.

In *The People* v. *Vernon*, which is a case in point, the Supreme Court of California says : " Declarations, to be a, part of the *res gestæ*, are not required to be precisely concurrent in point of time with the principal fact. If they spring out of the principal transaction, if they tend to explain it, are voluntary and spontaneous, and are made at a time so near it as to preclude the idea of deliberate design — then they may be regarded as contemporaneous, and are admissible." 35 Cal. 49.

" In the *Insurance Company* v. *Mosely*, 8 Wall. 397, where the question was carefully and ably considered, it was declared that though generally the declarations must be contemporaneous with the event, yet, where there were any connecting circumstances, they may, even when made sometime afterwards, form a part of the whole *res gestæ*." *Harriman* et al. v. *Stowe*, 57 Mo. 93.

The case of *The Commonwealth* v. *McPike*, 3 Cush. 181, is a leading case. The defendant was tried for the murder of his wife. The deceased ran from her room, in the night,

up stairs, bleeding and crying murder. The woman to whose room she fled went after a physician; another party who heard her cries went for a watchman, and, returning, went into the room and found her bleeding upon the floor. She told him the defendant had stabbed her. This evidence was permitted to go to the jury over objections of defendant, because it was said it was in the nature of *res gestæ*. "It will be observed that the declarations were not contemporaneous, but that considerable time must have elapsed between the time when the act was committed and that when the declarations were made; but the screams of the injured woman, her running into another room, her being found bleeding upon the return of the person who went for the watchman, all formed connecting links, and rendered the declarations equally as satisfactory as if they had been made at the time the wounds were given." 57 Mo. 93.

In a very able and elaborate opinion upon this subject, Nisbet, J., delivering the opinion, the Supreme Court of Georgia says: "The requirement of the rule further is that the declarations be contemporaneous with the transaction. Now, when the books say — when this court has said — that the declarations must be contemporaneous with the act, or when they or this court say that the declarations must be made *at the time* of the act, it is not to be understood that we or the books assert that declarations are never admitted unless their utterance is exactly coincident in point of time with the act. Declarations, in the legal sense of the word, may be *contemporaneous* with the act when they precede or follow the act; and when they are to be admitted, and when rejected if not coincident with the act, is a question for judicial discretion of embarrassing nicety — one which must depend upon the application of the principle upon which the rule is founded, and which I have endeavored to state, to the circumstances of each case. If the declarations appear to spring out of the transaction, if they elucidate it,

if they are voluntary and spontaneous, and if they are made *at a time so near to it* as reasonably to preclude the idea of deliberate design — then they are to be regarded as contemporaneous." *Mitchum* v. *The State*, 11 Ga. 615.

The following cases are also cited as enunciating and illustrating the same doctrine: *The State* v. *Wagner*, 61 Me. 173; *Comfort* v. *The People*, 54 Ill. 404; *Denton* v. *The State*, 1 Swan, 279; *Crookham* v. *The State*, 5 W. Va. 513; *Handy and Tull* v. *Johnson*, 4 Md.; *Rutland* v. *Hathorn*, 36 Ga. 380; *Goodwin* v. *Harrison*, 1 Root, 80; *Monday* v. *The State*, 32 Ga. 672; *Hart, Admr.*, v. *Powell*, 18 Ga. 635.

When we apply the test of these rules to the declarations made by Dick Reeves to his wife, as detailed by her on the trial of this case, we are of opinion that they were properly admitted as *res gestæ*.

3. As to the objection urged to the action of the court in excluding evidence of the character and standing in the community of James Rogers, at whose house and with whom the defendant was seen in conversation very early the next morning after the homicide, we cannot see the relevancy or importance of the testimony. Doubtless it might have been admitted. Its rejection, so far as we are able to see, furnishes no ground for error, such as would entitle the party to a new trial, or as would necessitate, even if it had been shown to be relevant, a reversal of the case. The rule is: "When, on the trial of a criminal cause, evidence is excluded which might have been properly admitted without prejudice to either side, but which, if admitted, would prove a fact so remotely connected with the case as to be entitled to no appreciable weight in favor of the defendant, its exclusion furnishes no ground for new trial." *Boon* v. *The State*, 42 Texas, 237.

4. Several errors are complained of with reference to the charge as given by the court to the jury. The first is that

it did not inform the jury as to the punishment for murder in the first degree. Our statute fixes the penalty for murder in the first degree at death. Pasc. Dig., art. 2271. There is now no discretion left to the jury, as under the Constitution of 1869, with regard to the assessment, or, rather, the commutation of the punishment. *Murray* v. *The State*, 1 Texas Ct. App. 417. The extent of the duty imposed upon the jury as to their verdict in murder trials is contained in the following language used in the Code: " If the jury shall find any person guilty of murder, they shall also find by their verdict whether it is of the first or second degree ; and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree of murder he is guilty ; and in either case, if they shall find the offense of murder to be of the second degree, they shall also find the punishment." Pasc. Dig., art. 2268. See, also, *Buster* v. *The State*, 42 Texas, 315.

In this case the verdict is : " We, the jury, find the defendant guilty of murder in the first degree." This is all they (the jury) were required to find under the law. It was responsive to the charge of the court, which was : " The jury in this case will find the defendant guilty of murder in the first degree, or they will find him not guilty." If it were necessary to do so, it would be but fair to presume that the jury were fully apprised of the character and degree of punishment which would follow their verdict ; and doubtless each juror, in being tested as to his qualifications to serve, was asked, in the language of the statute, whether or not he had " conscientious scruples in regard to the infliction of the punishment of death for crime." Pasc. Dig., art. 3041. There would have been no impropriety in the court's telling the jury what the punishment would be if their verdict was guilty of murder of the first degree ; it is, we believe, the uniform and better practice to do so. Still, we can see no impropriety in the omission to do so,

as would be the case in murder of the second degree, where they would have to assess the punishment. In a case in Georgia, where the penalty for the offense, as in murder here, was fixed absolutely by the statute, Chief Justice Warner said: "In regard to the charge of the court as to the punishment of the defendant in this class of cases, we would simply remark that the jury have nothing to do with the punishment prescribed by law for the offense, and it is much the better practice for the court to say nothing about it in its charge to them." *Russell* v. *The State,* 57 Ga. 420.

The second objection is to the eleventh subdivision or paragraph of the charge upon the question of *alibi,* which is in these words: "If, from all the evidence in this case, there arises in the mind of the jury a reasonable belief that the defendant, Ned Boothe, was at his own house and home at the very time when Dick Reeves was shot and killed, and was not at that time at the place of the killing of said Reeves, they will, in that case, find the defendant not guilty." Defendant's counsel did not ask any additional instructions, but in his motion for a new trial submits a charge which would have been a proper one in place of the one as quoted. The substitute which he suggests is in these words: "That if they (the jury) entertained a reasonable doubt of the presence of the defendant at the place Dick Reeves was killed, at the time of the killing, and if they entertained a reasonable doubt that, at that time, he may not have been elsewhere and at his own home, the defendant is entitled to the benefit of that doubt, and the jury should acquit him." We fully agree with counsel that the substitute is better than the original, that the substitute is the law, and that the original paragraph complained of, if taken by itself, would not be sufficient; but when taken in connection with the paragraph next succeeding it — which is, "12. If the jury entertain a reasonable

doubt of the guilt of the defendant, arising out of the evidence, they will find him not guilty "— we are of opinion that the charge was not calculated to mislead. The two paragraphs taken together certainly not only authorized and warranted, but instructed, the jury to find the defendant not guilty if they entertained a reasonable doubt as to the presence of the defendant at the time and place when and where the shooting was done.

"A charge, though in some particulars obnoxious to criticism, but which, taken together, could not have misled the jury, is not a ground for reversing the judgment." *Vaughan* v. *The State*, 21 Texas, 752. And, again: "A mere omission in one part of the charge of the court, if supplied substantially in another part, is not sufficient ground for reversing the judgment, where there is no cause to apprehend that the jury may have been misled or failed to comprehend the law." *Robinson* v. *Varnell*, 16 Texas, 386.

The third objection to the charge is because it appears that a portion of it had been erased after it was written by the judge. The affidavits of the district clerk and county attorney show that they examined the charge before it was read and handed to the jury, and that the erasure had been made at the time they examined it. Upon this state of facts we can see no ground of complaint. Certainly a judge has the right, before he has read his charge, to alter or amend it, either by erasures, or interlineations, or additions, and it is his duty to do so rather than submit anything, either improper or illegal, to the jury. It is only after the charge has been given and filed that his power to alter or amend it ceases. The words erased were, "Henderson Paul, who was indicted along with Ned Boothe, for the alleged murder of Dick Reeves, has been tried and found not guilty of that offense." It is not objected that this erased portion was any part of the law of the case, and if it be insisted

that it was a fact of which the defendant had the right to
have the jury apprised, then we say that the statement of
facts shows that the third witness put upon the stand by the
defendant was this same Henderson Paul, and he testified:
" I am the same Henderson Paul who was tried and ac-
quitted of the charge of the murder of Dick Reeves." The
objection is without force.

5. We propose to notice the three main grounds set up
in the motion for a new trial.

The first is that Easter Boothe, the wife of defendant, was
taken sick before her testimony was concluded, and was
compelled to leave the witness-stand. It appears from the
statement of facts that this witness made quite a full state-
ment of all she knew, but was not cross-examined. In her
affidavit, filed in support of this ground of the motion for a
new trial, after detailing the causes of her illness, she says:
" I further swear that, on the morning after Dick Reeves
was killed, my husband, Ned Boothe, after remaining all
night at home with our sick child, at my urgent request
went for medicine for the child, up to James Rogers', and re-
turned with the medicine without delay." She had already,
on the stand, testified that her husband remained at home all
night, sitting up with the sick child. The only additional
fact, then, which she proposes to prove is his going after
the medicine the next morning. If this fact was important,
then it had already been proven by Maria Dunlap, one of
the witnesses of defendant; and his wife's testimony upon
that point would have been simply cumulative. A new trial
will not be granted when the evidence sought is merely cu-
mulative. *Henderson* v. *The State*, 1 Texas Ct. App. 432;
*West* v. *The State*, 2 Texas Ct. App. 209; *Johnson* v. *The
State*, 2 Texas Ct. App. 456.

But admit, for the sake of argument, that the additional
testimony which this witness could have given was impor-
tant; would the court have erred in refusing a new trial, un-

der the circumstances? We think not. A case in point is this: " When plaintiff had examined a witness and delivered him over to the defendant for cross-examination, and before defendant could ask any questions in explanation the witness fell down in a fit, and the plaintiff, notwithstanding, went on with the trial, a new trial was refused." 2 Caines, 85; 3 Gra. & Wat. on New Tr. 881, 882.

The second ground of the motion for a new trial is that Colonel E. B. Pickett, the counsel of defendant, was taken sick during the trial, and was unable to argue the case to the court and jury, or even to be present during the argument. One of the grounds prescribed by statute as sufficient on a motion for a new trial is, " When the defendant has been tried in his absence, or denied counsel." Pasc. Dig., art. 3137.

In the case at bar the counter-affidavits show that Wharton Branch, Esq., an attorney at law, had assisted throughout during the trial, and that when Colonel Pickett was taken sick, neither he nor Branch asked for a postponement of the case, but that Branch insisted upon proceeding with it, and that he argued the case at great length to the jury. It was further shown that Branch was entirely familiar with the case; that he had defended Henderson Paul, jointly indicted with Ned Boothe, and had acquitted him. Now, the rule seems to be well settled " that when a cause is tried for the defendant by competent counsel, in the absence of counsel originally employed, and who had prepared the case for trial on the part of defendant, and also of counsel who had been employed to assist him on the trial, and, first, no postponement of the trial was asked on that account, and, second, it does not appear that the result would have been different if such counsel had been present — there is no right to a new trial." Vandyke v. Tinker, 11 Bank. Reg. 508; 6 Abb. Dig. (n. s.) 549, 550.

"Absence of counsel from the trial is no ground for

granting a new trial unless it be clearly shown that their presence would have affected the aspect of the case." *Brooks* v. *Richardson,* 9 Phil. 233 ; *Prowattain* v. *Townsend,* 9 Phil. 233 ; *s. c.,* 6 Abb. U. S. Dig. (N. s.) 550 ; *Madden* v. *The State,* 1 Texas Ct. App. 204.

Under the circumstances, we are of opinion that this ground was not good on motion for a new trial, nor is it sufficient here to reverse the judgment.

The third ground for the motion for a new trial was that set up in the affidavit of Mrs. Penny Harrigan, in substance to the effect that about July 1, 1876, just before Dick Reeves was killed, she had heard Jake Campbell, the step-son of Dick Reeves, say that he intended to kill him. Such evidence was not competent or admissible. In *Crookham* v. *The State,* 5 W. Va. 510, it was held that it was not error to exclude testimony offered by the prisoner to the effect that another and a different person from himself had made threats to kill the deceased just before the commission of the offense with which he was charged, and that immediately after the offense such other person left the county and has not since been heard from.

In *The State* v. *Davis,* the Supreme Court of North Carolina held that, " On the trial of an indictment for murder, the declarations of a third party which have no legal tendency to establish the innocence of the prisoner are not admissible as evidence in his behalf. Therefore, evidence that a third party ' had malice towards the deceased, a motive to take his life, and the opportunity to do so, and had threatened to do so,' is not admissible. In such a case, where the prisoner offered to prove that, sometime before the deceased was killed, a third party went in the direction of the house of the deceased, with a deadly weapon, and threatening to kill him, *held,* that the evidence was not admissible." 77 N. C. 483. This court, in the case of *Brown Bowen* v.

*The State*, 3 Texas Ct. App. 617, also held such evidence inadmissible.

With regard to the other affidavits in support of the motion for a new trial, the facts proposed to be proven by the affiants tended mainly to contradict or impeach the State witnesses, and the rule is that a new trial will not be granted when that is the main object of the testimony sought. *Gibbs* v. *The State*, 1 Texas Ct. App. 12; *Hauck* v. *The State*, 1 Texas Ct. App. 357; *West* v. *The State*, 2 Texas Ct. App. 209; *Thompson* v. *The State*, 2 Texas Ct. App. 289.

On the trial below, great and strenuous efforts were made to contradict and invalidate the testimony of the wife of the deceased with regard to his dying declarations as to the cause of his death, and the parties to its commission, and to show that both she and Phil Philander, the other wounded party, on the night after the homicide had stated, time and again, that they did not know who did it; and it was endeavored to be established that the implication of the defendant and Henderson Paul with the murder was an afterthought conjured up, instigated, and carried out at the instance of one Lucy Taylor. No reason or motive is shown why Lucy Taylor should have done this thing. And so far as the truth of the testimony of the wife and of Phil Philander, as to the parties to the deed, was concerned, that was a matter which, though contradicted, it was the peculiar province of the jury to pass upon and determine. The fact, however, that it was known and understood that these parties were suspected and believed guilty of the crime on the night of the homicide, and early on the morning following, is shown in the testimony of six other witnesses who testified at the trial below.

Taken as a whole, to our minds the evidence is amply sufficient to warrant the verdict and judgment. As we have

seen, the errors complained of as grounds for reversal are insufficient and untenable. We have faithfully endeavored, by a most thorough and patient consideration and study of this record, with the assistance of the able oral argument and brief of counsel, to determine impartially the guilt or innocence of this accused; and our honest conviction, sensible as we are of the solemn consequences of our action, is that whosoever may have been the other confederate with him in the perpetration of this diabolical assassination, all the facts and circumstances point with conclusive certainty to his guilt.

Believing that his trial has been a fair and impartial one, and that his life, under the law, is justly forfeited by his own act, in deliberately taking the life of his fellow-man, without excuse or justification, the judgment of the lower court in finding him guilty of murder in the first degree is, in all things, affirmed.

*Affirmed.*