## PELEG CLARKE v. JOHN H. CROSS.

The proviso to the Statute of Possessions, exempting from the operation of that Statute such persons as are subject to the disabilities therein specified until ten years after the removal of the same, applies only where some one of such disabilities exists in the person entitled to the estate at the commencement of the adverse possession, and if there be a succession of such disabilities, whether in the person then entitled, or in him and those who succeed to his title, such person or persons are protected by the proviso for no longer than ten years after the removal of the first.

TRESPASS and ejectment for three undivided fourth parts of a lot of land in Westerly. Plea, the Statute of Possessions. The plaintiff filed a replication, alleging " that the land and premises described in the plaintiff's declaration were, in the month of May, 1804, the property and estate, and in the possession of, one Philip Dring; and that the said Philip Dring died in June, 1804, being then the owner and possessor of said premises; and on the 30th day of June, 1806, one John Cross, of Westerly, was appointed administrator upon his estate, and the said John died before he had fully administered thereon, and subsequently, to wit, on the 23d day of February, Amos Cross, of Westerly, was appointed administrator upon said estate of Philip Dring. And the said Philip Dring, at the time of his death, to wit, in June, 1804, left four children living, to whom said premises described in the plaintiff's declaration descended as his sole heirs at law, one daughter and three sons, to wit, Catharine Dring, Benjamin Dring, Charles Dring, and John Dring, all mi-

nors under the age of twenty-one years. The said Catharine was born in January, 1794, and while under age was joined in marriage to George How, to wit, at the age of seventeen years, in the year 1811, and has re. mained a feme covert until the commencement of this suit. The said Benjamin Dring was born in November, 1796, and while under age, to wit, at the age of sixteen years, in the year 1812, removed beyond the limits of the United States. The said Charles Dring was born in October, 1798, and while under age, to wit, at the age of seventeen years, in the year 1818, also removed beyond the limits of the United States; and neither the said Benjamin, Charles, or John have ever returned to or been within the United States, and all of whom have since died intestate, and leaving no widow, or child, or heir at law, except their said sister, formerly Catharine Dring, now Catharine How, and the said Catharine How was and is the sole heir at law of the said Benjamin, Charles, and John, and inherited the premises described in the said declaration. And the said Catharine How, and George How, her husband, conveyed the same to the plaintiff on the 17th day of September, 1851 ; and the plaintiff further says, that within ten years after the removal of the impediments, aforesaid, the plaintiff has sued out his original writ in this behalf against the said defendant ; and this, &c."

To this replication the defendant demurred.

*Dixon*, for the plaintiff.

*A. C. Greene* and *Updike*, for the defendant.

BRAYTON, J. delivered the opinion of the Court.

The question raised in the argument of this cause is,

whether, under our Statute of possessions, where a person entitled to a right of entry is subject in succession to several of the disabilities mentioned in the proviso to that statute, he may claim the benefit of that proviso to all such disabilities, or must bring his suit within ten years after the removal of the first.

It seems to have been assumed in the discussion, that if the owner were under no disability at the commencement of the adverse possession, the operation of the statute would not be arrested by one subsequently arising ; but it was claimed, if one did not then exist, and others arose before its removal, the owner could not be barred until after all these disabilities had ceased. But if the point thus assumed be conceded, it opens the statute, notwithstanding the difference in phraseology between it and the Statute of 21 James 1, c. 16, to the settled construction given to that and similar statutes in most of the States, and there could be little hesitation in deciding, that the disability, existing at the commencement of the adverse possession, is the only one of which the plaintiff could avail himself. The question, therefore, is rather at what time the first impediment must exist, than whether one subsequently arising can be added.

By the general provisions of this act, an uninterrupted adverse possession for twenty years gives to the occupant a title as perfect as if acquired by deed duly recorded, whatever may have been the condition of the owner, even though an infant, feme covert, or non compos mentis, and whatever may have been the time when the possession commenced or was completed. The title is as perfect against all the world as it would have been by the levying of a fine under the Statute 4 Henry VII. The

defendant may plead it, as he might plead a title acquired by any mode of common assurance.

But the absolute operation of these general provisions is to some extent controlled by the proviso, which is as follows : " Provided, that nothing in this act shall be construed, deemed or taken to extend to prejudice the rights and claims of persons under age, non compos mentis, or those imprisoned or beyond seas, they bringing their suit therefor within the space of ten years after such impediment is removed."

It is claimed that the rights of a person, who is subject to several of the disabilities mentioned in this proviso, are preserved by it unprejudiced until ten years after the removal of them all.

What is the effect of the possession, supposing no disability to exist ? Against whom, from what time, and against what estate, right or title does it run ?

If the title continue in the same person, from the commencement of the possession to the end of the twenty years, all will agree that the possession runs against that person, and that title from the commencement. But suppose, at the end of eleven years, it passes from him by conveyance, devise, or descent cast, and there be a disability in the person next entitled, would not the continuance of the possession for twenty years bar the right? There never was any doubt of this. It could hardly happen in this trading, changing country, that the title would remain in the same person for twenty years; and if its transfer, whether by deed, devise, or descent, could defeat the effect of possession, there would be nothing fixed or definite upon which the statute could operate with certainty, and it would never fulfil its proposed object of quieting .possessions and avoiding suits at law.

59

This was the construction put upon the Statute 4 Henry VII. That statute was silent as to the person in whom the disability should exist. It was held that the statute ran against the right, equally in the heir as in the ancestor, and that the disability, which by the statute must exist at the time of fine levied, must be also in the person then entitled ; that it run against the right, in whomsoever it might be, as if it were and continued to be in him who had it at first.

Is the effect of the statute different if the estate continue in the same person ? The statute begins to run with the commencement of the adverse possession, each successive year counting against the title, until the close of the twentieth year, when it bars the title, and then by relation back to the commencement of the possession, binds the right and estate for that intervening time.

Now how is this result avoided by the proviso ? The term " prejudice," employed in the proviso, evidently has the same meaning as the term " bar," in the proviso as to remainder men and reversioners, for unless the party is barred he is not prejudiced. The proviso supposes the twenty years have run and the title is barred by the body of the act. But in considering this proviso there are certain things which arrest our attention, as indicating what was not the intention of the legislature, and thereby negatively indicating what must have been the true intent.

1. It was evidently not intended that any impediment, arising after the expiration of the twenty years, should be within the saving, for it would contradict the body of the act, if, when the title had become perfect, it should be defeated by matter subsequent.

2. It was not intended that the party in order to avoid the bar should have twenty full years free from all im-

pediments, for if he be under impediments for the first ten years and it then be removed, he is barred by the twenty years, unless he sue within the last ten years in which he is free.

3. He has ten years certain after the removal of the disability, whatever time he may have had in the beginning free from impediment. It could not, therefore, have been contemplated that he had had any time, prior to the disability, or the legislature would have provided that it should be counted, if, in any case, it would with the ten years make more than twenty years in the whole free from disability.

4. The impediments are all put upon the same footing, whether voluntary or involuntary. It is not, then, to be presumed that the legislature intended that a party should protect himself from the bar by voluntarily creating a disability, as by going out of the country or contracting marriage. Such a construction would leave the statute open to all the evils intended to be guarded against; and, so far from settling, it would unsettle titles. At most, the intention could have been to save those who had not been for at least ten years during the twenty years' possession, free to sue. No difference is made in the construction of any of the statutes, between voluntary and involuntary disabilities. *Doe* v. *Jones,* (4 T. R. 301. 307.)

Infancy, from the nature of things, could not be a disability arising subsequent to the commencement of the possession, for the disability must exist in the person then entitled. The only other involuntary impediments are non compos mentis and imprisonment. And among these the only one, which would fall within the equity of the proviso, if it accrued subsequent to the commencement of the adverse possession, would be the becoming of unsound

mind, that being without the act or defanlt of the party. But this is on the same footing with absence from the country.

If the disability accrued, before the right existed or was supposed to exist, there is abundant reason why it should prevent the operation of the statute, for it could have been with no view to the estate or any adverse claim; but the party, when first entitled, having been of full age and sound discretion, there is no reason to protect him from the consequences of his own voluntary acts. The parties entitled are not saved because they cannot sue at all, for they may sue notwithstanding the impediment, but because while the impediment exists, they shall not be charged with negligence if they do not.

To relieve from the bar of the act, there must be an impediment existing at the commencement of the adverse possession. This opens the statute, as before said, to the settled construction given to all the statutes of limitations as well as to the statutes of fines, that successive disabilities cannot be tacked or added.

Then, if there be an impediment existing at the commencement of the adverse possession and that impediment be removed, has the party any more than ten years in any case after its removal, or may he add thereto another impediment, accruing after possession commenced but before the first impediment is removed, and so claim that it is a continued disability?

There is no reason for adding, for if it will relieve the party, it may do so *proprio vigore* as one existing within the twenty years. But because no such impediment was within the proviso, it cannot be made such by coupling it with another prior thereto and which was within it.

The second proviso, in relation to remainder-men and reversioners, shows how stringent this act was designed to be.  This proviso was not originally in the act, and they were barred though they had no right to sue.  And by the proviso, afterwards introduced, they are saved only upon condition that they sue within ten years after the determination of the particular estate or after they first have the right to sue.  They are not saved by any impediment of the first proviso, but by the existence of the particular estate only, and ten years may count against them, when they might not only be excused from suing, but in which they could not sue.

From the preamble of the act it is clear, that the act itself was intended to be stringent in its effects.  It sets forth as the motive for its enactment, that at the first settlement of the State, " lands were of little or no value, and skilful men in the law were much wanted, whereby many deeds, grants and conveyances were weakly made, which may occasion great contests in law, if not timely prevented."  It is entitled " an act for quieting possessions and avoiding suits at law."  These were the evils—many titles were defective or doubtful—great contests in law were threatened or apprehended ; evils bringing with them the danger of perjuries and other mischiefs.  These evils were to be timely prevented by quieting possessions and legalizing them ; and the statute proceeded to effect the purpose, not by barring the right of action of the former owner simply, unless he sue or make entry within twenty years after his right accrue, or unless he shall enter within twenty years next before suit, but it provides further, that the possession shall be quieted by transferring to the person in possession the absolute right

of property, ascertaining the title and settling it, as against all persons, beyond all dispute.

The statute of 21. James I. c. 16, and the other statutes of limitation, are *in pari materia* with this ; the same general purpose is to be accomplished, as to avoid law suits, prevent litigation, settle rights. It proceeds to effect the purpose in a mode somewhat different, but directed to the same end. That statute bars the plaintiff, unless he shall make entry or bring suit within twenty years after the title first accrues, and that, whether the defendant had been in the continued possession for twenty years or not ;—it did not depend on the title, real or supposed, of the defendant in particular ; it was sufficient that the plaintiff had been out of possession for twenty years when he sues.

This statute of possessions was enacted in 1711. The statute 21 James 1. c. 16, was expressly introduced and adopted in 1749, or rather at that time, recognized as having been in force before, and supplied a defect in the statute of possession in this, that unless the defendant had been in possession for twenty years, claiming the land all the time as his own in fee simple, though the plaintiff may never have been in possession, he could not defend against the plaintiff, but he must stand upon his original title or his possessory title.

Now, if we suppose this statute of James, to have been introduced to cover this defect, as it is reasonable to do, then we may and must presume, that the saving was such, and no other, as was attached to the statute of possessions, and that no person should be saved by it, who would not be saved by the statute of James. In the statute of James, the saving was more clearly expressed and had received a construction such as we have now

given. It was introduced with its construction put upon it by the English Courts, and, (it may be reasonably inferred,) because the proviso was understood to be the same in substance as in the statute of possessions. And certain it is that, whatever may be the difference in the phraseology of the statutes of limitation in the several States, the construction has uniformly been such as is given to the statute of James and the statute of fines.

We find but one case which is a direct authority in the case before us upon all its points. That is *Caldwell & Wife* v. *Thorp*, (8 Alabama.) The statute of Alabama provides that the time, during which the person, who hath or shall have such right or title of entry, shall have been a minor, &c., shall not be reckoned. It was held that the proviso expended itself upon the person first enitled, if at the time his title accrued he was under the disability to acquire the benefit of it, and, that being removed, no subsequent disability would stop the statute from running. The disability must exist at the first or the time must be reckoned, and the Court say, that all these statutes of limitations are *in pari materia,* and must receive a like construction.

And in *Walden* v. *The heirs of Gratz*, (1 Wheat. 292,) the Supreme Court of the United States, in construing the statute of Kentucky, held, that it must be construed like all other statutes on the same subject. *Inman* v. *Barnes*, (2 Gallison, 315.) *Rogers* v. *Hillhouse*, (3 Conn. 404.)

As to that portion of the premises claimed in this suit, which was inherited by the said Catharine How directly from her father, Philip Dring, as her disability of coverture could not be added to that of infancy, her right became barred at the end of ten years after her arrival at

full age. As to that portion inherited from her brothers, the right became barred on the expiration of ten years after arrival of the brothers respectively at full age;

Judgment must be for the defendant.