## MILES BEACH *against* ABIJAH CATLIN.

*Where the question in an action of ejectment was, whether a deed under which the defendant claimed was fraudulent as against creditors, the plaintiff offered to prove, that the grantor, being in custody on two executions, proposed to the witness to convey to him the land on being discharged from the executions, with an understanding that he should answer the amount to the creditors, and on being reimbursed should reconvey said lot, and ultimately do justice to the grantor; that the witness declined, but suggested to him that the defendant would do it; that the witness and grantor then went to the defendant; that the grantor and defendant went into another room; that immediately after, the defendant gave a receipt to the officer for property taken on the executions; and the grantor executed the deed in question. Held that this evidence was inadmissible, the proposition of the grantor to the witness being* res inter alios acta, *not brought home to the defendant.*

*A grantee, under a fraudulent conveyance, cannot acquire a title by possession against the creditors of the grantor.*

MOTION for a new trial.

This was an action of ejectment. The suit was commenced on the 8th of *March*, 1809.

The defendant claimed title by a deed from *Nathaniel Brace*, who, as was agreed, was, in *November*, 1788, owner of the demanded premises; at which time, he sold the same to the defendant. The plaintiff contended that said deed was fraudulent and void against the creditors of *Brace*; that he was a creditor of *Brace*; and by the levy of an execution on the 8th of *July*, 1805, had acquired title to the land.

In the course of the trial the plaintiff offered to prove, by *Lewis Catlin*, that he, as constable, had two executions against *Brace*, on which he was in custody, and offered to convey said lot to him said *Lewis*, if he would discharge him therefrom; said *Lewis* understanding that he should be obliged to answer the amount to the creditors, and on being reimbursed should reconvey said lot, and ultimately do justice to *Brace*; that said *Lewis* refused to comply, but told *Brace* perhaps the defendant would do it; that said *Lewis* and *Brace* went to the defendant; that *Brace* and the defendant went into another room; that immediately after, the defendant gave a receipt to said *Lewis* for property taken on said executions, and *Brace* executed a deed of the land in question to the defendant. To the admission of this evidence the defendant objected; but the objection was overruled. And went to the defendant; that the grantor and defendant went into another room; that immediately after, the defendant gave a receipt to the officer for property taken on the executions; and the grantor executed the deed in question. Held that this evidence was inadmissible, the proposition of the grantor to the witness being *res inter alios acta*, not brought home to the defendant.

A grantee, under a fraudulent conveyance, cannot acquire a title by possession against the creditors of the grantor.

the court charged the jury, that fraudulent conveyances were void as to subsequent as well as prior creditors; that where a man in failing circumstances conveys property to another for a less sum than its value, upon a secret trust or understanding that the purchaser shall do the seller justice, such sale is fraudulent and void as it respects creditors; that where a purchaser takes possession of lands by a fraudulent conveyance he cannot acquire a title by fifteen years' possession under such deed; and that no length of possession, under a fraudulent conveyance, will be a bar to the creditors of the grantor. After verdict for the plaintiff, the defendant moved for a new trial, on the ground that the court erred in receiving the testimony, and also in charging the jury.

*Daggett* and *Bacon*, in support of the motion.

1. The points to be discussed in this case arise on the admission of the testimony of *Catlin*, and the charge of the court to the jury. With regard to the first, we contend that it is liable to every objection which can be made to hearsay evidence, and that we are not to be affected by it. How does the fact that *Brace* offered certain terms to *Catlin* prove that the defendant entered into a fraudulent contract? He was not privy to those offers; they never came to his knowledge; and, of course, he never assented to them. Nor can any possible connection be shown between those proposals to *Catlin*, and the subsequent agreement with the defendant. Those offers were no part of the *res gesta ;* and it would be hard to subject the defendant by presumptions drawn from facts to which he never assented, and over which he had no control, and upon which his contract in no way depended. The grantor will be thus admitted to defeat his own conveyance; and by one offer carrying the marks of fraud destroy the effect of a subsequent *bona fide* sale to an innocent purchaser. The rule allowing fraud to be presumed from circumstances has already

June, 1810.

BEACH
v.
CATLIN.

June, 1810. been carried great lengths; but a privity between the parties has always appeared. *Swift's Ev.* 153. *Gibson* v. *Hunter*, 2 *Hen. Bla.* 288. *Gardner* v. *Preston*, 2 *Day*, 205. was decided on the ground of a fraudulent combination. *Swift's Ev.* 155. The decisions of the superior court have uniformly been against the admission of the testimony here received.

It is urged that the objection was improperly made; and did not point to that part of the testimony to which only exception can be taken. But is it so, that if we object to the whole testimony of a witness, the whole is to be received, if any part be proper? We had thought that an objection to the whole of necessity included an exception to every part; and that when counsel believed an exception lay against every part of the evidence, the court would not admit the whole because they differed from the counsel, and considered a single fact admissible.

2. We claim that the charge of the court was incorrect. The principles of the *Roman* law are inapplicable; and if admitted, would prove too much. Indeed, were they adopted in their extent, they would entirely defeat our statute of limitations. By the civil law, if the possessor is not in possession without consciousness of another's right, he cannot prescribe. To this the case of *Bealey* v. *Shaw*, 6 *East*, 214. is directly opposed. The law heretofore declared in *Connecticut* will support the defendant's case. *Trowbridge* v. *Royce*, 1 *Root*, 50.; and to show what evidence of adverse possession is available, *Lane* v. *Cofly*, 1 *Root*, 68. is a direct authority. To the same point also are *Smith* v. *Isaacs*, 1 *Root*, 151. and *Miller* v. *Dow*, 1 *Root*, 412. We contend that no case is to be taken out of the statute, unless it comes expressly within the savings. *Prideaux* v. *Webber*, 1 *Lev.* 31. *South Sea Company* v. *Wymondsell*, 3 *P. Wms.* 143, 144.

No direct evidence of a *trust* appeared; and it should have been left to the jury to determine whether there

BEACH
v.
CATLIN.

was any trust; for the court might be of opinion that a June, 1810. fraudulent grantee, as such, could not gain a title, yet the jury might have found that the defendant had been in possession fifteen years by a different title, and that he had held adversely to all the world. *Fisher et al.* v. *Prosser*, *Cowp.* 217.

BEACH
v.
CATLIN.

It would be a dangerous rule to admit, that a title could be acquired in fifteen years against a deed, and not be safe from parol proof of fraud at the end of thirty.

As to the plaintiff's not having a right of entry until the levy of his execution, it surely is a fair presumption that he has waived his right after a lapse of fifteen years, even supposing the conveyance to have been originally fraudulent as regards him. But the statute has run against somebody; here has been an adverse possession more than fifteen years.

But the plaintiff had no interest in the land to be protected from the operation of the statute. His claim accrued subsequently to the sale of the land to *Brace*; and it cannot be pretended that credit was given with a view to security from this land, as the defendant went immediately into possession under his deed.

*Gould*, contra. The grounds on which the defendant claims a new trial, are, 1. That the evidence, stated in the motion, was inadmissible; and, 2. That the direction to the jury was against law.

1. Under the first head of objection, the only question necessary to be discussed, relates to the testimony of *Lewis Catlin*; all exception to the other parts of the evidence being waived.

The purpose for which *Lewis Catlin's* testimony was introduced, was to show, not only that *Brace*, at the time of executing the deed, was embarrassed with debts, and pressed by his creditors; but that the receipt, given by the defendant, was the consideration of the deed. That it was proper for the plaintiff to prove these facts, and that a *part* of the testimony in question was admissible

June, 1810. for that purpose, is not denied. But it is objected, that
so much of it as relates to the offer made to the witness
by *Brace*, ought to have been rejected, because the de-
fendant was not *privy* to the offer.

BEACH
v.
CATLIN.

We answer, 1. that the defendant's having been privy
to the offer or not, can make no difference in the case.
If such an offer, made to the witness in the *presence* of
the defendant, would have been admissible in evidence,
(and this the reason assigned in support of the objection
presupposes,) it must be so, though made in his *absence*;
for the ground of objection cannot be, that the evidence
in question is in the nature of hearsay; since the offer
by *Brace* was not a *declaration* of any *fact* that had taken
place. On the contrary, it was itself in nature of an *act*—
a part of the *res gesta*, or transaction, to which the testi-
mony immediately related. Upon any principle, there-
fore, on which it was competent for us to prove that
*Brace* was in custody on execution; that he went, in
custody, to the defendant's house, for the purpose of ob-
taining the means of enlargement; that the latter gave
a receipt to the witness, on taking the deed; and that, in
consequence of the receipt, *Brace* was discharged from
custody; it was equally proper for us to prove the offer
made to the witness; that being one of a series of con-
nected *acts*, which, taken together, conduced to prove
both that *Brace* was embarrassed, and that the receipt
was the consideration of the deed.

The declarations of a party, *accompanying* his own act,
may, when that act is the subject of inquiry, be given in
evidence, even in his *own* favour; *because* declarations,
made under such circumstances, are considered as part
of the fact or transaction in question. This rule was ad-
mitted by the *Attorney-General* and *Bower*, *arguendo*, in
*Hardy's Case*, 1 *M°Nally's Ev.* 373. 375. 377. and is fully
established in *Bateman* v. *Bailey*, 5 *Term Rep.* 512. and
in *Aveson* v. *Kinnaird*, 6 *East*, 188. Its application to the
present question is perfectly obvious.

But *Brace's* offer to the witness would have been admissible evidence, even if it had stood unconnected with any of the subsequent facts. For it furnishes strong evidence of his being in embarrassed circumstances at the time of giving the deed: a fact which a creditor, claiming against a deed as being fraudulent, may always prove, and which is always provable by the *acts* of the grantor.

2d. If that part of the evidence, to which the objection is now confined in the argument, was inadmissible; no advantage can be taken of it on this motion; for, as appears in the motion, and as the fact was, the exception at the trial was taken not to any particular *part* of *Lewis Catlin's* testimony, but to the *whole* of it together. If, then, any part of it was admissible, the objection cannot prevail; otherwise, verdicts might be overturned upon a general objection to the whole of a witness's testimony, however multifarious it might be, if a single irrelevant expression should have escaped him during his examination.

2. As to the question of misdirection, the objections are reduced, in the argument, to two: 1st. That a fraudulent conveyance is good, as against *subsequent* creditors; and, 2d. That a fraudulent purchaser by a possession of fifteen years, under the fraudulent conveyance, acquires a valid title against all the grantor's creditors, whether subsequent or antecedent.

1st. It is very manifest, that subsequent as well as prior creditors, are exposed to the mischiefs intended to be prevented by the statute against fraudulent conveyances. Their claims are, therefore, within the reason of the statute; and if so, are entitled to its protection; for all statutes in suppression of fraud are to be liberally expounded. It seems unnecessary, however, to discuss this question as an original one; for it is put at rest by authority. It was resolved in *Twine's Case*, 3 *Co.* 82. b. that, " if one, to prevent a forfeiture, by felony or out-

June, 1810.

BEACH
v.
CATLIN.

lawry, makes a gift of his goods, and is *afterwards* at-tainted or outlawed, the goods are forfeited notwithstanding the gift." In *Creswell* v. *Cokes*, *Dyer*, 351. b. it was de-termined, that if one, before his death, sells all his horses, without consideration, to defraud the lord of his heriot, (the right to which cannot accrue till *after* the vendor's death,) the sale is fraudulent and void as against the lord. And Chief Baron *Comyns* says, in his *Digest*, tit. *Covin*, (B. 2.) " *Without question*, every gift, grant, &c. being fraudu-lent, shall be void, as to creditors, &c. whether they claim by a *younger*, or by an *elder* title." The same rule is recognised in *Walker* v. *Burrows*, 1 *Atk.* 94. and in *Tay-lor* v. *Jones*, 2 *Atk.* 600. And since the case of *Mason* v. *Rogers*, 1 *Root*, 324. it has been uniformly approved, and adhered to by our own courts.

2d. To the second objection we answer, that no length of possession by a fraudulent purchaser, under the fraudu-lent deed, will bar the grantor's *creditors ;* for the pos-session, in such a case, is in *execution* of the fraud, and is, therefore, itself a fraud upon the creditors. It is one of the very acts by which the fraudulent agreement is to be carried into effect. Can a contract be covinous, and the execution of it in pursuance of the fraudulent in-tent not so ? But it is objected that the defendant, if he had been in possession fifteen years, without *any* convey-ance from *Brace*, would have acquired a valid title against the creditors ; and we are then asked, can he be in a worse situation than if he had never taken a deed ? The obvious answer is, that, in the case supposed, there would have been no *fraud* between the grantor and the defend-ant ; and, therefore, no claim, on the part of the credit-ors, under the statute. But where there *is* a fraudulent conveyance, the covin destroys the effect, as well of the acts or means by which the intended fraud is to be ef-fected, as the fraudulent contract itself. So that, to every purpose to which the conveyance is of no effect, the grantee's possession under it must be so.

This view of the question is not only correct, as we
trust, on principle, but warranted by authorities. *Ro-*
*berts*, in his treatise on the statutes, 13 & 27 *Eliz.* p. 521.
observes, that " a fraudulent estate forfeits the protection
of every statute which gives confirmation to doubtful
titles ; and while a *disseisor* has the benefit of the sta-
tutes of fines and *limitations*, a title acquired by *covin* is
*indefinitely* open to be disputed." In *Cotterell* v. *Pur-*
*chase*, *Cas. temp. Talb.* 63. Lord *Talbot* lays down the
same doctrine ; as does *Domat*, also, under the title of
*Possession* and *Prescription*. (1 *Domat*, 495.)

But it is still objected that, as the statute of limita-
tions had run against *Brace*, so that *he* had no title
when the land was taken in execution, the plaintiff, of
course, could acquire none. Without occupying time
to show that this argument is directly opposed, as it
clearly is, to the authorities just referred to, it is suffi-
cient to observe that the conclusion ia *non sequitur.*
For, independently of the defendant's possession, and im-
mediately after the deed was delivered to him, *Brace* clearly
had no title ; the conveyance being good, as between
the parties to it. But the opposite counsel will not
surely deny that a creditor to *Brace*, by the levy of an
execution on the land, at *that* time, could have obtained
a title. And, indeed, in no case, in which a creditor ob-
tains a title by execution, against a fraudulent convey-
ance, does the property, at the time of the levy, belong
to the debtor. *Brace's* want of interest, therefore,
when the land was taken in execution, furnishes no an-
swer to our claim.

The objection, however, admits of another reply, viz.
that the defendant's possession, the deed being fraudu-
lent, cannot be deemed to have been *adverse*, as to
*Brace*. A fraudulent conveyance, as contemplated by
the law, is designed to create a secret, fraudulent *trust*
for the grantor. The grantee holds, not *against* the
grantor, but *for* him. In judgment of law, therefore,

the defendant's possession, if considered by itself as a distinct, substantive ground of claim, would not give him a title as against *Brace*. The very foundation, therefore, of the last objection fails.

To the argument *ab inconvenienti*, that according to our doctrine, the defendant's title must remain unsettled for an indefinite period, it may be answered, that both law and justice require that while *he* continues to hold, it should so remain. Who is liable to be affected by this doctrine? No other than a *fraudulent* purchaser, whom the statute of limitations was never intended to protect. A possession of fifteen years, by a *bona fide* purchaser under him, would, doubtless, require a different consideration.

SWIFT, J. It was formerly the practice to admit what was said by a fraudulent grantor respecting his intent to defraud his creditors prior to the conveyance, as evidence in an action against the fraudulent grantee, though he had no knowledge of it; but this practice cannot be warranted on principle; for the grantee ought not to be affected by the declarations of the grantor, unless they come to his knowledge; and though a grantor may have a fraudulent intent, this may be wholly unknown to the grantee, and the transaction may be *bona fide* on his part.

In this case, it was competent for *Lewis Catlin* to testify that he had executions against *Brace*, which he had levied on his body; that he and *Brace* went to the defendant; that *Brace* and the defendant went into another room; that immediately after, the defendant gave a receipt for property taken on the executions, and *Brace* executed a deed. These were facts which, taken in connection with the other testimony, might explain the transaction. But it was not admissible to prove the proposition of *Brace* to the witness, *to convey to him the land on being discharged from the executions, with an un-*

June, 1810.

BEACH
v.
CATLIN.

*derstanding that he should answer the amount to the cre-
ditors, and on being reimbursed should reconvey the land,
and ultimately do justice to Brace ; and that the witness
declined, but told him perhaps the defendant would,* be-
cause, from the circumstance *that Brace went immediately
to the defendant and gave him a deed of the land, who
thereupon executed a receipt for property taken on the ex-
ecutions,* the jury could not be warranted to presume, or
draw an inference, that *Brace* made to him the same
proposition, and that the conveyance was executed in
pursuance thereof. Though there can be little doubt
that *Brace* made the offer to the defendant, from the cir-
cumstances proved, and it was under this impression
that the court below, in the hurry of the trial, admitted
the proof; yet this is mere matter of conjecture, which
should never be admitted as evidence in a court of jus-
tice. A circumstance to furnish presumptive evidence
against a party should be brought home to his know-
ledge. An offer by *A.* to *B.* to make to him a fraudulent
conveyance, which he declines accepting, is no evidence
that a subsequent conveyance of the same land to *C.* is
fraudulent. The offer of *Brace* to the witness was a
transaction between other parties, *res inter alios acta,*
not brought home to the defendant, and he ought not to
be charged by it.

The other question is, whether the defendant can pro-
tect himself by the possession of fifteen years under the
statute concerning the possession of lands.

It is unnecessary to consider the question whether
fraud will take the case out of the statute; for I appre-
hend, on a sound construction, it will be found neither
to be embraced by the words, nor comprehended within
the meaning, of the statute; and it would be a new idea
to construe a statute liberally for the protection of fraud.

The statute does not enact that a naked possession of
fifteen years shall vest a title in the possessor ; but that
no person shall make entry into any lands, but within fif-

June, 1810.

BEACH
v.
CATLIN.

teen years after his right shall accrue, and in default thereof, shall be excluded from making entry. It has been the uniform construction here, and of a similar statute in *England*, that the possession must be adverse; that the possessor must claim title in himself, and deny the title of all others; that he must be guilty of an actual disseisin.

The possession of the defendant in this case could not be adverse to the title of *Brace;* for *Brace* had no title or right of entry. The statute supposes the possessor holds adversely to some one having title and right of entry. If *Brace* had no such right, then the relative situation of these parties was such that the statute could not operate upon them; and it is a solecism to say, that a man acquires a title to land by an adverse possession of fifteen years against another, when he had previously acquired from him a legal title by a deed duly executed and recorded. The defendant acquired all the title of *Brace* the instant the deed was executed; how could he acquire any thing more by fifteen years' possession?

As it respects the creditors of *Brace*, there is no ground to pretend that the statute can operate. The plaintiff had no right of entry before the levy of his execution on the land, and he has brought his action within fifteen years from that period. He had till that time nothing but a right to proceed against *Brace* till he obtained an execution for his debt, and then to levy it on the land. This right to levy on the land, is not a right of entry, and cannot be within the letter or meaning of the statute; and it is not supposable that the legislature contemplated a right of this description. When a creditor levies on the land, then a right of entry accrues; and at that time the statute begins to run against him.

But the true point of light in which this transaction is to be considered is this: The defendant, by the deed, took all the right of *Brace*, but he held the lands subject to the claims of his creditors, and in the nature of a

6

trustee for them. His possession was inconsistent with no right of *Brace;* for he had none. It was inconsistent with no right of the creditors; for they had no title to the land, or right of entry. The defendant had a lawful possession of the land, till the creditors levied upon it, and took it for their debts; he disseised nobody, and no one, not even the creditors, could enter upon him, or maintain trespass against him. His possession was consistent with every existing claim, and could be adverse to none, because it was lawful; and it is an undeniable position, that a lawful possession acquires no title under the statute.

I am therefore of opinion that the charge to the jury was correct; but that a new trial ought to be granted for the admission of improper testimony.

BRAINERD, BALDWIN, and J. C. SMITH, Js. were of the same opinion.

N. SMITH, J. I am in opinion with my brother SWIFT, that the court erred in admitting *Lewis Catlin* to testify respecting conversations with *Brace,* in the absence of the defendant. The declarations of one are never admitted to affect another who is not present and assenting to them, unless they accompany some act about which testimony is adduced; and then they must be considered as explanatory only, and not as original and distinct proof.

I think, also, that the court were incorrect in the charge they delivered to the jury.

The court, in the first place, instructed the jury as to the facts necessary to constitute a fraudulent conveyance; and here they do not require that the jury should find any intent to defraud a creditor, nor even that the defendant knew that *Brace* was in failing circumstances. But I have no doubt of the correctness of this part of the charge. The direct tendency of the contract was

June, 1810.

BEACH
v.
CATLIN.

to defraud creditors; and this has frequently been adjudged sufficient to set aside a contract in favour of creditors, whether there was an intent to defraud them or not. The court then instructed the jury, that where a purchaser takes possession of lands by a fraudulent conveyance, he cannot acquire a title by fifteen years' possession under such deed; and that no length of possession under such fraudulent conveyance will be a bar to the creditors of the grantor. This opinion of the court, I think, is incorrect. The inquiry, under the statute for quieting possessions, should be, has the defendant been in possession in his own right, holding all others out, for the term of fifteen years? And not, how did he come by such possession? The first inquiry is authorized by the statute; the latter is altogether unauthorized.

The creditors of *Brace* do not claim under a new independent title; they take his title, and come in under him. The statute against fraudulent conveyances removes the deed from *Brace* to *Catlin* out of their way; as to *them*, therefore, *Catlin* went into possession without deed. The creditors must take all the consequences of the deed being void; they cannot both claim it to be *void* and *valid*; they cannot declare the deed void so as to take *Brace's* former title, and at the same moment declare it good so as to avoid *Catlin's* possession. But I do not admit that their possession was imperfect as against *Brace* himself. It had every quality required by the statute for quieting possessions. He holds the possession in his own right in opposition to *Brace*; and there is no pretence that this possession was to be delivered back in any event. And it is no objection to the nature of this possession, that *Catlin* held it under a deed that was valid; though as to *Brace*, he, having a good valid deed, might not wish to avail himself of his possession; yet he could, if he pleased, and would not be obliged to rely on his deed.

It was said, in argument, that the taking possession was a wrong act, and a part of the fraud; and the deed

being void, the possession must be void also. To be sure, all wrongful possessions are in themselves void, and of no effect. It is the statute for quieting possessions which gives to them their whole operation. In that statute I look in vain for an exception in favour of wrongful possessions. What can be more wrong than to turn a man out of his lands by force, and hold him out by strong hand? And what possession can be more void, than one thus acquired, and thus held? And yet does any one doubt that such a possession, if held fifteen years, would secure the title? The statute against fraudulent conveyances declares the deed void; leaving the possession which may be acquired under it, like any other wrongful possession, to the operation of the other statute. But if the argument I oppose would apply to any case of fraudulent conveyances, it must be to one where there was a fraudulent intent, and not to those of mere constructive frauds, which are deemed fraudulent and void as to creditors without any intent to deceive. And the proposition advanced by the court before, does not confine the principle to cases of actual frauds; but is general in its application, and comprises every species of fraudulent conveyances. Had it been confined to cases of fraudulent intent, it could have had no application to the case before the court; because no fraudulent intent was claimed or pretended.

I confess I should feel some degree of concern to have it considered as settled law, that *no length of possession under a fraudulent conveyance will be a bar to the creditors of the grantor;* and this to apply as a general rule to all cases, whether there were actual fraud or not.

It ought to be remarked, that the fact of fraud may, and frequently must, be proved by mere parol testimony; and this may be a fact not only fifteen, but twenty or thirty years before the trial. It ought, also, to be remarked, that this fact, when established by parol, is to overset a record title. And if no length of possession

June, 1810.  is to secure the record title against these attacks of parol
            testimony; if the durability of records, and the open vi-
BUSH        sible occupancy of lands, are to be thus set at naught by
v.
BRADLEY.    the mere parol recollection of witnesses, after the lapse
            of so many years, there will be no safety to our titles.

EDMOND, J. concurred in this opinion on both points.

MITCHELL, Ch. J. and TRUMBULL, J. thought that the
admission or rejection of the evidence in question would
not affect the event of the cause; and, on that ground,
were opposed to the granting of a new trial. They were
of opinion that the charge was correct.

REEVE, J. being interested in the question, gave no
opinion.

New trial to be granted.