CECILIA PHILLIPS RUICK *v.* MARY TWARKINS ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued March 3—decision released June 1, 1976

*Neal H. Jordan,* with whom was *Jack A. Wall,* for the appellant-appellee (named defendant).

*Thaddeus W. Maliszewski,* for the appellants-appellees (defendants Dorothy Drewnoski et al.).

*Louis B. Blumenfeld,* with whom, on the brief, was *John F. Scully,* for the appellee-appellant (plaintiff).

HOUSE, C. J.  This was an action to settle title to ten acres of land in the town of East Granby and for damages and attorney's fees.  The plaintiff is the mother of the three defendants, and this controversy between her and three of her four daughters concerns the daughters' claims to the one-half interest in the land previously owned by the plaintiff's deceased husband, their father.  The plaintiff

claims title to this contested one-half interest by adverse possession. The defendants claim title by the law of intestate succession.

The court found facts which it concluded warranted a judgment of title in the plaintiff by adverse possession but no relief in the form of damages or attorney's fees. From this judgment the defendants have appealed, making numerous assignments of error in the court's finding of certain facts, in reaching certain conclusions, and in rendering the judgment without factual support. Most of the assignments of error have been abandoned in the defendants' combined brief on their appeal. *First Connecticut Small Business Investment Co.* v. *Arba, Inc.,* 170 Conn. 168, 169–70, 365 A.2d 100. The issues briefed concern whether a probate decree, allegedly void because of fraud in obtaining jurisdiction, may be used as a basis for a claim of title by adverse possession, and whether possession by a parent who is a cotenant with her children may, as against those children, furnish a basis for the parent's claim of title by adverse possession.

The plaintiff filed a cross appeal, maintaining that the court's conclusion that she had committed fraud in procuring the Probate Court decree "was legally or logically inconsistent with the facts found." She also made numerous assignments of error addressed to the finding but those not briefed are treated as abandoned; *First Connecticut Small Business Investment Co.* v. *Arba, Inc.,* supra; and, in the ones briefed. we find a conflict in the evidence and evidence which fully supports the court's finding. We do not retry the facts or pass upon the credibility of witnesses. *Marquis* v. *Drost,* 155 Conn. 327, 330, 231 A.2d 527. Since the issue

whether there was fraud in obtaining the probate decree must be resolved in order to treat adequately the defendants' appeal, we consider first the merits of the cross appeal.

From the evidence, the court found the following facts: On October 9, 1922, the plaintiff married James Hayes and had as issue of the marriage four daughters born between 1923 and 1929, the three defendants and Helen Powers. With money borrowed from the plaintiff's mother, the plaintiff and Hayes purchased at auction, as tenants in common, property in East Granby for $1000. The plaintiff and Hayes lived on the property until 1925 when they moved and lived at various addresses in Hartford and Newington. In July, 1929, Hayes left home, abandoned the plaintiff and never returned. During these difficult depression years, the family was further broken up, the plaintiff was hospitalized and the daughters became wards of the state. In 1933, the plaintiff and her daughters were reunited. Although the evidence is conflicting, the court found that during the years 1932 to 1937 the plaintiff and some of her daughters made visits to the home of Hayes' parents in New York City and often saw him there.

The court found further that the plaintiff, on June 3, 1938, applied to the Probate Court for the district of East Granby for letters of administration on Hayes' estate and, despite her knowledge to the contrary, stated on her application that he had died on or before June 27, 1930. The Probate Court granted administration of the estate based on the statutory presumption of death arising from the alleged seven-year period of unexplained absence. General Statutes (Rev. 1930) § 4908. The inventory filed listed Hayes' only asset as a half-

interest in the property in question which, for inventory purposes, was valued at $125. On July 26, 1938, the Probate Court distributed Hayes' half-interest in the property to the plaintiff in the form of a widow's allowance, and a copy of the order of distribution was recorded on the land records on August 20, 1938. No further steps were ever taken to complete the administration of the estate. At the time of the administration of the estate, all four daughters were minors but no guardian ad litem was appointed and they were not told that their mother had probated their father's estate. On August 6, 1938, the plaintiff married her present husband, Jesse Ruick, and less than one month later, on September 3, 1938, Hayes died.

On these findings, the court properly could conclude, as it did, that the decree of the East Granby Probate Court was procured by fraud on the part of the plaintiff. *Smith* v. *Frank,* 165 Conn. 200, 202, 332 A.2d 76; see *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 515, 271 A.2d 69. The fraud concerned a jurisdictional fact, the asserted death of the decedent, and the decree was subject to collateral attack and to being declared null and void. *Killen* v. *Klebanoff,* 140 Conn. 111, 116, 98 A.2d 520; *Folwell* v. *Howell,* 117 Conn. 565, 572, 169 A. 199; 1 Locke & Kohn, Conn. Probate Practice §§ 41, 121; see General Statutes § 45-9. The court did not find, however, and there is nothing in the record to indicate, that the plaintiff in any way influenced the Probate Court to distribute the property solely to her. In fact, her application for letters of administration listed all the daughters.

Notwithstanding the questionable validity of the probate decree, the court found the following facts relevant to the plaintiff's claim of title by adverse

possession: Hayes' one-half interest was distributed to the plaintiff as a widow's allowance and the certificate of distribution was recorded. Since the termination of the probate proceedings in 1938, the plaintiff has regarded herself as the sole owner of the property and has never regarded her children as having any interest. She and her present husband, Jesse Ruick, built a house on the property and moved into it in 1939 with her four daughters. She and Ruick have made other improvements on the property, including painting, aluminum siding, a barn, and a garage. The garage was converted into living quarters for Ruick's father. Portions of the property at various times have been rented and all income from rents or farming were retained by the plaintiff. In 1957, the plaintiff sold seven-eighths of an acre along the highway to the state of Connecticut. On two occasions after 1938, the plaintiff mortgaged the property. She has paid real estate taxes on it each year from the time it was purchased.

The court found further that the defendants, because of family conversations and requests by the plaintiff to sign some papers regarding the land, suspected that they had some interest in the property, but they were unaware that the interest was as cotenants. They were provided a home on the land by their mother and their stepfather until they had finished or almost finished school or were married, but all left the home prior to reaching the age of majority. Each of them was well aware of the plaintiff's claim of exclusive ownership as were neighbors and the community in general. The defendants claimed no interest in the land until 1970, when, after consulting an attorney, two of them filed a notice of claim on the land

records, pursuant to § 47-33f of the General Statutes. The plaintiff first learned of any of her daughters' claims in 1972 from a newspaper clipping when, following an offer to the plaintiff to sell the property for approximately $100,000, the fourth daughter, Helen Powers, in her capacity as a real estate agent, sought to obtain a quitclaim deed from her sisters to her mother and all three sisters then asserted their claims.

The court concluded that the plaintiff had asserted her claim to be the sole owner of the property from the date she recorded the probate decree on August 20, 1938, up to the time of trial. It further concluded that the plaintiff had established the requisite ouster (exclusive possession which was open, visible and notorious under a claim of title, and without license or consent of the daughters) far in excess of fifteen years and sufficient for the plaintiff to acquire title by adverse possession. We find no error in this conclusion.

"The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right." *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 462, 338 A.2d 470. By such adverse possession, the true owner is barred by a statute of limitations; General Statutes § 52-575;[1] from making entry into the subject lands.

---

[1] "[General Statutes] Sec. 52-575. ENTRY UPON LAND TO BE MADE WITHIN FIFTEEN YEARS. No person shall make entry into any lands or tenements but within fifteen years next after his right or title to the same first descends or accrues; and every person, not entering

The gravamen of the defendants' first claim relating to the court's conclusion of adverse possession is that the fraudulently procured probate decree distributing the real estate to the plaintiff could not furnish color of title upon which to base a claim of title by adverse possession. Two observations serve to place this issue in proper perspective. Color of title is not an element of adverse possession in the absence of a statutory requirement. 3 Am. Jur. 2d, Adverse Possession, § 106; 2 C.J.S., Adverse Possession, § 68; annot., 71 A.L.R.2d 409, "Judgment as Color of Title," § 2; cf. *Ahern* v. *Travelers Ins. Co.*, 108 Conn. 1, 5, 142 A. 400. Section 52-575 of the General Statutes is substantially in the form of its original enactment[2] (3 Col. Rec. 146 [1684]) and does not require proof of color of title although "color of title" or "claim of title" language has, from time to time, appeared in decisions of this court, most often in cases involving cotenants. E.g., *Hagopian* v. *Saad*, 124 Conn. 256, 258, 199 A. 433; *Lucas* v. *Crofoot*,

as aforesaid, and his heirs, shall be utterly disabled to make such entry afterwards; and no such entry shall be sufficient, unless an action is commenced thereupon and prosecuted to effect within one year next after such entry; but, if any person who has such right or title of entry into any lands or tenements is, at the time of the first descending or accruing of such right or title, a minor, non compos mentis or imprisoned, he and his heirs may, notwithstanding the expiration of such fifteen years, bring such action or make such entry at any time within five years next after full age, coming of sound mind or enlargement out of prison, or his heirs shall, within five years after his death, bring such action, or make such entry, and take benefit of the same; provided the limitation herein prescribed shall not begin to run against the right of entry of any owner of a remainder or reversionary interest in real estate, which is in the adverse possession of another, until the expiration of the particular estate preceding such remainder or reversionary estate."

[2] For a detailed historical analysis of the Connecticut statute concerning adverse possession, see *Cahill* v. *Cahill*, 75 Conn. 522, 531-34, 54 A. 201 (dissenting opinion of *Hamersley, J.*).

95 Conn. 619, 625, 112 A. 165; *Comins* v. *Comins,* 21 Conn. 413, 417; *Rogers* v. *Hillhouse,* 3 Conn. 398, 403. Proof of such a claim has been utilized to demonstrate " 'an actual intent to exclude the cotenant permanently from his rights.' *Newell* v. *Woodruff,* 30 Conn. 492, 497." *Lucas* v. *Crofoot,* supra, 624. This is particularly relevant in such cases in view of the undivided interest held by cotenants where possession taken by one is ordinarily considered to be the possession by all and not adverse to any cotenant. *Bryan* v. *Atwater,* 5 Day 181; *Doolittle* v. *Blakesley,* 4 Day 265; 3 Am. Jur. 2d, Adverse Possession, § 173; 2 C.J.S., Adverse Possession, § 135 (b). Hence, the language reflects a recognition of the presumption that one cotenant's possession is subservient to the title of the other cotenants. *Camp* v. *Camp,* 5 Conn. 291, 303; *Bryan* v. *Atwater,* supra, 191; 3 Am. Jur. 2d, Adverse Possession, § 173. To overcome that presumption, a cotenant claiming adversely to other cotenants must show actions of such an unequivocal nature and so distinctly hostile to the rights of the other cotenants that the intention to disseize is clear and unmistakable. *Bryan* v. *Atwater,* supra, 191–92; 3 Am. Jur. 2d, Adverse Possession, § 174. The defendants' contention that the probate decree, void because obtained by fraud, may not furnish proof of the elements of ouster and claim of right against the cotenants is without merit. We have no doubt that a void probate decree may furnish such proof. *Baker* v. *Baker,* 4 Cal. 2d 235, 48 P.2d 685; *Replogle* v. *Replogle,* 350 S.W.2d 735 (Mo.); *Smith* v. *Nyreen,* 81 N.W.2d 769 (N.D.); *Records* v. *Miles,* 200 Okla. 62, 191 P.2d 918; *Nicholas* v. *Cousins,* 1 Wash. App. 133, 459 P.2d 970; cf. *Lucas* v. *Crofoot,* supra, 625; *Comins*

v. *Comins,* supra; *Rogers* v. *Hillhouse,* supra, 403–404. The function served by the void decree, and indeed the true function of the element of claim of right, is to prove an ouster and exclusive possession so openly and notoriously hostile that the cotenant will have notice of the adverse claim. *Goodwin* v. *Bragaw,* 87 Conn. 31, 38, 86 A. 668; 3 American Law of Property § 15.7.

In the present case, the plaintiff's adverse possession began when the probate certificate of distribution was recorded on August 20, 1938. It began not against her daughters, because they had no right of entry as heirs at that time, but against her then still living husband. The plaintiff's ouster of James Hayes was clearly and unmistakably demonstrated by the recording of the certificate of distribution, her assumption of exclusive possession of the property, her remarriage, and the construction of a new house on the land. We do not agree with the defendants' contention that the plaintiff's fraud or motive in obtaining the order of distribution bars the running of § 52-575 of the General Statutes. "[T]itle may be acquired even though the possessor knows that he is occupying wholly without right; all that is necessary to prove is that there was a user as of right, that is, one in disregard of any rights of the holder of the legal title." *Horowitz* v. *F. E. Spencer Co.,* 132 Conn. 373, 378, 44 A.2d 702; *French* v. *Pearce,* 8 Conn. 439, 443–45; *Rogers* v. *Hillhouse,* supra; 3 American Law of Property §§ 15.2, 15.5. "It is the character of [the plaintiff's] possession, and not the probate proceedings, that must be decisive here. . . . The administration herein under the presumed death statute, whatever its actual effect may have been, was clearly for the purpose and with the intent of

eliminating [the husband's] interest in the land and [the plaintiff's] evidence sufficiently shows that thereafter [she] believed [she] owned it, claimed to own it and exercised unequivocal acts of ownership over it of an overt, notorious character sufficient to constitute notice of [her] claim." *Replogle* v. *Replogle,* 350 S.W.2d 735, 737, 739 (Mo.).

The defendants' reliance on *Beach* v. *Catlin,* 4 Day 284, is misplaced, for that case expressly held (p. 293) that it was "unnecessary to consider the question whether fraud will take the case out of the statute" and concerned a conveyance fraudulent as to creditors with the grantee claiming adverse possession against the former owner and against the former owner's creditors. The court held that the statute never began to run against the former owner, as he had conveyed his title to the defendant and did not begin to run against the former owner's creditors until they levied on the land, a period of less than fifteen years. See *Sumner* v. *Child,* 2 Conn. 607, 621.

Section 52-575 is a statute of repose. As the Restatement of Property, chapter 38, in its introductory note comments: "Principal objectives of the law in both adverse possession and prescription are the protection of long established positions and a relatively prompt termination of controversies. Prominent among the reasons for which such a termination is deemed desirable is the protection of valid claims against continued impairment in value by claims without valid foundation, and against loss through the dissipation by lapse of time of the evidence by which the invalidity of such claims may be proved. The effect may be, and often is, to destroy a valid claim and to make valid one pre-

viously invalid." The circumstances of the present case are clearly illustrative of the effect of the statute noted in the last sentence of the Restatement note.

The defendants' final two claims raise the single question of whether a parent in cotenancy with children may acquire title as against them under the statute or whether by license and consent to the possession of the land by the parent cotenant the children acquiesce in the parent's possession, rendering it permissive as to their interest. A cotenant "may oust the others of their possession and by possession adverse to them for fifteen years rob them of their interest in the property." *Standard Co.* v. *Young,* 90 Conn. 133, 136, 96 A. 932; *Hagopian* v. *Saad,* 124 Conn. 256, 259, 199 A. 433; *Goodwin* v. *Bragaw,* 87 Conn. 31, 38, 86 A. 668. That a parent may adversely possess against a child or a child against a parent is well settled. *Standard Co.* v. *Young,* supra (mother against children); *Lane* v. *Coply,* 1 Root 68 (son against father). The fact that the children were minors is of no consequence. " 'The statute always begins to run against a man the moment he is disseized, whether he is under a disability or not: all the difference is, that an additional time is allowed where a disability exists, after the removal of it.' Swift, Ch. J., in *Bunce* v. *Wolcott,* 2 Conn. 27, 33; *Griswold* v. *Butler,* 3 . . . [Conn.] 227 [246]." *Carney* v. *Hennessey,* 74 Conn. 107, 112, 49 A. 910; *Rogers* v. *Hillhouse,* 3 Conn. 398, 404. The plaintiff's adverse possession began when she ousted from possession her then living husband, James Hayes, and it continued against his other heirs, their daughters, when the daughters gained a right of entry upon his death. Since the daughters

were then minors, the statute afforded them five years after reaching majority to assert their rights. General Statutes § 52-575. This they failed to do. In the final analysis, whether possession is adverse is a question of fact for the trier. *Wadsworth Realty Co.* v. *Sundberg,* 165 Conn. 457, 463, 338 A.2d 470. We find no error in the trial court's finding of facts or in its conclusions based on those facts that the plaintiff's title by adverse possession was complete in 1955, long before the defendants asserted any right to an interest in the property, and that by statute they are barred from entry.

There is no error.

In this opinion the other judges concurred.