[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a quiet title action brought in 1989 by the Greenberg Family (hereinafter "the Greenbergs") against Algonquin Gas Transmission Company (hereinafter "Algonquin") seeking title to a disputed 12-acre parcel of land and monetary damages against Algonquin for trespass.
The Greenbergs filed the original action against CT Page 2534 six defendants who were the record owners of the land in question at the time of the commencement of the suit. Since that time all defendants save Algonquin have relinquished their respective interest in the property for reasons irrelevant to these proceedings.
Algonquin claims that it has two easements in the property both of which it obtained from previous owners of the disputed property. The first easement, Algonquin argues, was obtained from Jack H. Low and Ruth Low (hereinafter "the Lows") in 1951. Algonquin asserts that the second easement was obtained in 1986 from the Connecticut Bank and Trust Company, N.A., Trustee (hereinafter "CBT, Trustee") and John R. FitzGerald, Trustee (hereinafter "FitzGerald, Trustee").
Furthermore, Algonquin claims that the Greenbergs do not have a cause of action for trespass because the Greenbergs never had possession of the property. Finally, Algonquin argues that, even if the plaintiffs were successful in this action, they are entitled to no more than nominal damages because they cannot prove actual or specific damages.
The Greenbergs claim that Algonquin's easements are invalid because the respective grantors did not have an interest in the property they attempted to convey.
The court finds the following facts to have been proven.
In 1948, Israel Greenberg sold part of his dairy farm in Norwich, Connecticut, to the Lows. (See defendant's Exhibit 4). Mr. Greenberg, the father of the plaintiffs, retained title to part of the farm.
In the early 1950's, Algonquin was planning to build a gas transmission pipeline through the Town of Norwich. In connection with this project, Algonquin negotiated and purchased an easement from the Lows dated December 12, 1951, which easement was recorded in the Norwich Land Records in Volume 259, Page 200. (See defendant's Exhibit 5). This easement ran over land which the Lows had purchased from Israel Greenberg by deed dated May 17, 1948 and recorded in Volume 244, Page 35 in the Norwich Land Records. (See defendant's Exhibit 4). At the time the easement was conveyed from the Lows to Algonquin, the Lows CT Page 2535 were the record owners of a portion of the former Greenberg property, including the disputed 12-acre parcel.
Several months after the 1951 easement was granted to Algonquin, the Greenberg's predecessor in title, Israel Greenberg, granted a similar easement over his remaining property to Algonquin. This easement was dated March 26, 1952 and was recorded in the Norwich Land Records in Volume 260, Page 226 of the Norwich Land Records. (See defendant's Exhibit 6).
Algonquin built a 6-inch gas transmission pipeline through the disputed 12-acre tract and over the Israel Greenberg property in 1952. To date, that pipeline is still in operation. In 1986, Algonquin proposed the construction of a new pipeline that would be adjacent and parallel to the existing pipeline. In connection with this new project, it obtained additional easements from landowners in the area.
On July 2, 1986, CBT, Trustee, under an agreement with John K. Adams dated February 24, 1961, and FitzGerald, Trustee, jointly executed an easement to Algonquin which easement was recorded on July 8, 1986, in Volume 726, Page 235 of Norwich Land Records. (See defendant's Exhibit 21).
Israel Greenberg died in Norwich in 1967. His will was admitted to probate on June 24, 1970. A probate court certificate concerning the distribution of Israel Greenberg's real estate in Norwich to the Greenbergs was dated March 4, 1971 and recorded in the Norwich Land Records in Volume 363, page 417. (See defendant's Exhibit 12).
The Greenbergs negotiated and conveyed an easement to Algonquin, dated February 28, 1986, which easement was recorded in the Norwich Land Records in Volume 789, Page 7. (See defendant's Exhibit 20). The amount of the stated consideration for the conveyance of the foregoing easement was $27.00. Additionally, as Edward Harney of Algonquin testified, damages in the amount of $4,973.00 were paid to the Greenbergs.
With regard to this 12-acre parcel, all of the property taxes were paid by the record owners during their respective ownership periods. The record owners of the land were as follows: CT Page 2536
1. May 17, 1948 to May 10, 1954 — Jack and Ruth Low
2. May 10, 1954 to April 13, 1956 — Eva Cohen
3. April 13, 1956 to July 29, 1964 — Benjamin Miller
4. July 29, 1964 to November 10, 1975 — John K. Adams
 5. November 10, 1975 to October, 1979 — John R. FitzGerald, Trustee
 6. October, 1979 to June 21, 1987 — John R. FitzGerald, Trustee and CBT, Trustee
 7. June 21, 1987 to December 30, 1991 — Tim and Minjer Chiou
 8. December 30, 1991 to present — Eastern Savings and Loan Association
(See defendant's Exhibits 5, 7 through 11, 13 through 19, 22, 23 and 26).
John FitzGerald testified that when the subject property was sold by Miller to Adams in 1964, (see defendant's Exhibit 10), the zoning of the land was changed from rural to residential at the request of Adams. (See defendant's Exhibit 37). This change of zone was a condition precedent to his purchase of the land.
Adams also optioned the land for sale and hired real estate brokers to market the land. (See defendant's Exhibits 38 through 46). He also walked the property, and in 1964 he hired a surveyor named Francis J. Leonard to survey the property. (See defendant's Exhibit 30). The Leonard survey indicated that the disputed 12 acres were owned by John K. Adams.
Adams conveyed title to John FitzGerald, Trustee and received title back to the property in order to mortgage it. This occurred several times. (See defendant's Exhibits 11, 13, 15, 16 and 18). Adams created a trust (John K. Adams Trust), and in 1979 CBT, Trustee and FitzGerald, Trustee became owners of the property. (See defendant's Exhibits 18 CT Page 2537 and 19).
Meyer Greenberg, the plaintiffs' only witness, testified that he first learned of a title problem involving the acreage in question sometime in 1989, 22 years after his father's death and 41 years after his father had sold part of the Greenberg property (including the disputed 12 acres) to the Lows in 1948. Israel Greenberg claimed no ownership rights to the disputed land at any time during his life. Furthermore, Meyer Greenberg testified that he did not visit the property at any time during the period of 1944 through 1985.
Edward Harney and Edward Hughes of Algonquin testified that Algonquin improved and maintained its easements from the early 1950's through 1992.
In 1986, Algonquin was in the process of building a second gas pipeline. As part of this project it obtained an easement across the Greenberg's property adjacent to the disputed acreage. At that time, the Greenbergs failed to indicate to Algonquin that they claimed any interest in the 12-acre parcel of land.
Also in 1986, Algonquin negotiated and purchased an easement across the disputed property from CBT, Trustee, and FitzGerald, Trustee. At no time during Algonquin's negotiations with the Trustees did any representative of the Greenbergs indicate to either the Trustees or Algonquin that the Greenbergs claimed ownership to the land which the Trustees claimed to own.
It was not until 1989 that a lawsuit was filed seeking to quiet title to the disputed 12 acres of land.
DISCUSSION
A. Trespass — Proof of actual or constructive possession of the disputed twelve acre parcel.
In order to sustain an action for trespass a plaintiff must establish actual or constructive possession of the property in question. Banks v. Watrous, 136 Conn. 597,599, 739 A.2d 329 (1950). A plaintiff relying on constructive possession must prove he has title to the CT Page 2538 property in question and the absence of actual exclusive possession by another. More v. Urbano, 151 Conn. 381, 383,198 A.2d 211 (1964), citing Banks, supra.
The Greenbergs do not assert that they were in actual possession of the property, in fact their only witness testified that he had not visited the property between the period of 1944 and 1989. Therefore, in order to sustain an action for trespass they must prove the absence of actual exclusive possession by another.
Algonquin presented testimony that the record owners of the property actually used and possessed the property during their respective periods of ownership and treated the property as their own up until 1989. Algonquin presented testimony that the foregoing owners paid the property taxes on the property during their respective periods of record ownership, mortgaged the property, applied for zone changes, marketed the property for sale, and sold the property to their successors in interest.
Accordingly, the Greenbergs have failed to sustain their burden of proof and the court hereby rules in favor of the defendant on the claim of trespass.
B. The 1951 easement — Prescriptive Easement
Algonquin asserts that it has an easement in the 1951 easement regardless whether the grantor had title to convey because it has an easement by prescription.
"To acquire a right of way by prescription, there must be a uses [sic] which is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right. General Statutes 47-57." Kaiko v. Dolinger,184 Conn. 509, 510, 440 A.2d 198 (1981). "Use under a claim of right means, `without recognition of the owner of the servient tenement.'" Wadsworth Realty Co. v. Sunberg,165 Conn. 457, 463-64, 338 A.2d 470 (1973), quoting Zavisza v. Hastings, 143 Conn. 40, 46, 118 A.2d 902 (1955). The dominant estate enjoys the benefit of the right of way while the servient estate — here the disputed 12 acres — bears the burden. Aksomitas v. South End Realty Co., 136 Conn. 277,281, 70 A.2d 552 (1940). "The use must have been so open, visible and apparent that it gave the owner of the servient CT Page 2539 land knowledge and full opportunity to assert his own rights." Klein v. DeRosa, 137 Conn. 586, 588-589,79 A.2d 773 (1951).
In 1951 Algonquin cleared the trees along the right of way, and brought machinery and workers onto the land, in order to build the pipeline. It maintained the right of way by mowing it and insuring that nothing impeded the course of the right of way and that no leaks occurred in the pipe line. Essentially Algonquin treated the right of way as its own for forty years. As the easement was recorded on the Norwich Land Records, the Greenbergs had constructive notice of Algonquin's claim of right. Furthermore, Algonquin's open and notorious possession was continuous as the Greenbergs did not assert their rights until 1989, almost forty years later. Therefore, Algonquin has acquired an easement by prescription in the 1951 easement.
C. The 1986 easement — Adverse Possession
Algonquin argues that the 1986 easement is valid because the grantors obtained fee title to the property by adverse possession.
"The essential elements of an adverse possession sufficient to create title to land . . . are that the owner shall be ousted from his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession . . . without the license or consent of the owner under a claim of right." Wadsworth Realty, supra, 462.
A claimant's adverse possession begins with the ouster of the owner's possession. See Ruick v. Twarkins,171 Conn. 149, 160, 367 A.2d 1380 (1976). In other words, the 15-year statutory period begins to run at the time of entry upon the land claimed. Ruick, supra. an "adverse possession" is possession hostile to the title of another. Loewenberg v. Wallace, 151 Conn. 355, 357, 197 A.2d 634
(1964).
If a claimant holds property under the mistaken belief that the land is within his or her deed, and exercises physical dominion over the disputed area, this possession is sufficient to ripen into an adverse possession. Id. "The CT Page 2540 defendant's intent, which was carried out, was to maintain an exclusive possession . . . It was immaterial that the intent was not wrongfully motivated, but sprang from an honest, even though mistaken, belief as to the land embraced in their deed of acquisition." Id., 357-58.
An adverse claimant may "tack on" his or her actual, exclusive, hostile, open and continuous possession to that of a prior adverse possessor to establish the requisite statutory period of fifteen years. Matto v. Dan Beard, Inc.,15 Conn. App. 458, 479-80, 546 A.2d 854 (1988)., cert. denied209 Conn. 812, 550 A.2d 1082 (1988).
The Lows purchased a portion of Israel Greenberg's property in 1948. They took title by warranty deed. Thereafter, the Lows exclusively possessed the land, including the disputed 12 acres, openly, visibly and exclusively, under a claim of right for the six years that they held title to the land. This adverse possession is evidenced by the fact that they paid the property taxes for the entire tract, including the disputed 12-acre parcel, walked the land and treated it as their own. Thereafter, all record owners in the chain of title of the Low piece exclusively possessed the 12-acre tract, ousting Israel Greenberg and later the Greenbergs from possession. The Norwich Tax Collector, testified that all of the record owners of the land paid the property taxes for the disputed 12 acres. Charles Glinski, the Norwich Tax Assessor, testified that the 12 acres were included in the Low chain of title on the assessor's map from 1963 to 1992. (See defendant's Exhibits 27-29).
John FitzGerald testified at length regarding the activities of John Adams, CBT, Trustee and himself, in his capacity as Trustee and owner of the land, including the disputed 12 acres, during the period of 1964, when John Adams took title to 1987, when CBT, Trustee and FitzGerald, Trustee sold the parcel to Tim Chiou. The evidence presented indicates that the record owners all used the land openly, visibly, exclusively and under a claim of right for the periods in which they were record owners. There was no evidence that the Greenbergs interrupted this possession during this some odd thirty-eight year period.
Therefore, when CBT, Trustee and FitzGerald, CT Page 2541 Trustee negotiated and sold an easement to Algonquin in 1986, some thirty-eight years after the beginning of the adverse possession, they had acquired the disputed acreage by adverse possession.
CONCLUSION
For the foregoing reasons the court hereby renders judgment in favor of the defendant, Algonquin Gas Transmission Company.
Hurley, J.