[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have brought this action seeking damages and an injunction based on their claim that the defendants dumped refuse on their land and twice vandalized a fence installed by the plaintiffs on property belonging to them and adjacent to property belonging to the defendants. The defendants filed an answer denying the material allegations of the plaintiffs' complaint and alleging, by way of cross complaint, that the defendants have been in adverse possession of the property claimed by the plaintiffs in their complaint for an uninterrupted period of at least fifteen years under claim of right. The plaintiffs denied this claim of adverse possession, and a trial was held in Meriden on September 21, 1994.
Based on the evidence, exhibits and stipulations, the court makes the following findings: CT Page 11428
The plaintiffs and the defendants own adjacent properties on Woodhouse Avenue in Wallingford, Connecticut. The property known as 46 Woodhouse Avenue has been in the family of the defendant Brenda Trumpold since 1918. The plaintiffs have owned their properties at 52-54-56 Woodhouse Avenue since 1991.
In November of 1992, the plaintiffs caused a fence to be erected along the east-west property line dividing their property from that of the defendants. The cost of the installation of this fence was $2,120.
Just over a year after the fence was installed, the plaintiff noticed that it was gone. Police subsequently found the wire fence rolled up, although the poles and cement were still in the ground. The plaintiffs had the fence reinstalled in November of 1993 at a cost of $842.70. Within days, that fence too was removed.
No witness claimed actually to have seen the defendants or anyone acting on their behalf engaged in the removal of the fence, although the plaintiff testified that, shortly after it was erected, he saw several people standing around the fenceposts, tampering with them, and that one of them appeared similar in appearance to the defendant Ernest Trumpold. Beyond this admittedly equivocal sighting, however, there is substantial circumstantial evidence to suggest that the defendants were responsible for the removal of the fences. For example, at the time of the construction of the original fence, Ernest Trumpold complained to Mario Moutinho and threatened to take it down. On November 11, 1992, Ernest Trumpold filled at least one of the holes which had been dug for a fencepost and, in the presence of Wallingford Police Officer Brown, threatened to cut the fence down if it were built.
In addition, Leon Kwiatkowski, the plaintiffs' surveyor, testified that in November of 1993 he had driven by the property and had seen the defendants' son Eric shaking one of the fenceposts and that much of the fence had already been removed. Following the second removal of the fence, Ernest Trumpold rather preposterously claimed to Wallingford Police Officer Kim Odell that Moutinho had himself removed the fence. Additionally, the defendants, and particularly Brenda Trumpold, made clear their belief that the fence was on property belonging to them and not to the plaintiff. Ernest Trumpold described his wife's belief in CT Page 11429 that regard as bordering on the hysterical and in fact testified that it was his frustration with her hysteria, rather than any actual destructive intent on his part, that had caused him to state in the presence of Officer Brown that he was going to take down the fence. Finally, the Trumpolds had deposited trash on the plaintiffs' property, eventually necessitating the calling of the police in June of 1994.
It is clear that the plaintiffs had no interest in destroying their own fence. No credible alternative theory has been advanced to explain the destruction of the original fence and of its successor. Although Ernest Trumpold and Eric Trumpold both testified that they had nothing to do with the removal of the fence, the court finds their denials unconvincing. The defendants had the motivation to remove the fence, their son was seen engaged in an act consistent with the removal of the fence, Ernest Trumpold was seen doing an act consistent with the removal of the fence, and Ernest Trumpold, in the presence of a police officer, had threatened to remove the fence. The court finds that the plaintiffs have proved by a fair preponderance of the evidence that the defendants are responsible for the destruction of the plaintiffs' fence. They are thus entitled to damages in the amount of $2,962.70 plus the $200 cost for the expert witness, the licensed surveyor, Leon Kwiatkowski. The court also finds that the defendants cause refuse to be dumped on the plaintiffs' property and awards nominal damages in the amount of $25.
Based on the same evidence supporting the plaintiffs' claim for damages, the court grants a permanent injunction prohibiting and restraining the defendants from removing or interfering with the fence of the plaintiffs, trespassing on property of the plaintiffs and depositing trash and debris on the property of the plaintiffs.
The testimony of the plaintiffs' expert witness, Leon Kwiatkowski, to the effect that the actual property line as claimed by the plaintiffs is the correct one, was not disputed at the trial. The defendants claim, however, that they have been in possession of the disputed portion of the plaintiffs' property through "continuous, hostile, exclusive, open and notorious possession for an uninterrupted period of at least fifteen years under claim of right", that the property is therefore theirs by virtue of adverse possession, and that the plaintiffs are not entitled to damages or injunctive relief arising out of their CT Page 11430 having erected a fence on property which, by virtue of adverse possession, belongs to the defendants.
The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of his possession and kept out uninterruptedly for a period of fifteen years, by an open, visible and exclusive possession by the claimant without the license or consent of the owner and under a claim of right.Ruick v. Twarkins, 171 Conn. 149, 155, 367 A.2d 1380 (1976);Wadsworth Realty Co. v. Sundberg, 165 Conn. 457, ___. ___ 462,338 A.2d 470 (1973); Matto v. Dan Beard, Inc., 15 Conn. App. 458
(1988).
Adverse possession "is not to be made out by inference, but by clear and positive proof." Roche v. Fairfield, 186 Conn. 490,498, 442 A.2d 911 (1982); Whitney v. Turmel, 180 Conn. 147,148, 429 A.2d 826 (1980); Wadsworth Realty Co. v. Sundberg,165 Conn. 457, 462, 338 A.2d 470 (1973); Robinson v. Meyers,156 Conn. 510, 517, 244 A.2d 385 (1968). "`[C]lear and convincing proof' denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." Dacey v. Connecticut Bar Assn., 170 Conn. 520,536-37, 368 A.2d 125 (1976).
In support of their claim of adverse possession, the defendants introduced evidence tending to show that 46 Woodhouse Avenue had been in Brenda Trumpold's family since 1918 when it was acquired by her grandfather. In the early 1950's, her family had placed some chicken wire on a portion of the land now in dispute to keep cows from wandering onto their property. That chicken wire fence was later replaced by a white picket fence and subsequently by a small row of pine trees. A portion of a driveway now used as a parking area by the defendants also extends onto the disputed property. In the mid-1970's, the defendants built a patio, part of which extends into the disputed land, and a sidewalk, all of which is in the disputed area.
It is clear from the surveys prepared on behalf of both CT Page 11431 parties that record title to the entire disputed property is with the plaintiffs. It is also clear, however, that the defendants have in fact used a portion of the disputed land for at least fifteen years, extending their patio onto it and making other minor improvements. Whether any of these activities were "hostile" to the plaintiffs or their predecessors in title or "without the license or consent" of the plaintiffs or their predecessors, however, was not established by the evidence. There was no evidence from which this court could conclude that the defendants' limited use of this small portion of the property which is now in dispute was undertaken in any way in opposition to the wishes of the true owners of the land. Moreover, other than the highly equivocal depositing of trash on a different portion of the disputed property, there is nothing in the evidence to suggest that the defendants were using any portion of the plaintiffs' property other than the small strip of land in the immediate vicinity of the defendants' house. There certainly was no suggestion of any evidence of the defendants' open, visible and exclusive possession of the majority of the land on which the plaintiffs had placed their fence. Even assuming that all of their testimony about the history of the two properties is accurate, the defendants have not established adverse possession by clear and convincing evidence.
The most that the defendants may be said to have done is to establish the basis for a claim of prescriptive easement for that small portion of the disputed property into which their patio, walk and former driveway extend, up to the "row of pines". They have not, however, pled a prescriptive easement, and the court does not so find. Even if the prescriptive easement were made out, however, it would not justify the destruction of the fence erected by the plaintiffs.
Judgment will therefore enter in favor of the plaintiff on counts one and two of its complaint. The court awards damages in the amount of $3,187.50 and a permanent injunction prohibiting and restraining the defendants from removing or interfering with any fence erected by the plaintiffs on the plaintiffs' property, from trespassing on the plaintiffs' property and from depositing trash and debris on the plaintiffs' property. Judgment will also enter in favor of the plaintiffs on the defendants counterclaim.
Jonathan E. Silbert, Judge CT Page 11432